UNITED STATES, Appellee

v.

RUSSELL E. DODGE, First Lieutenant, U. S. Army, Appellant

3 USCMA 158, 11 CMR 158

No. 1834

Decided July 31, 1953

Lt Col George E. Mickel, U. S. Army, Lt Col Edgar R. Minnich, U. S. Army, and 1st Lt John P. Mann, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, Lt Col William R. Ward, U. S. Army, and 1st Lt Martin Blackman, U. S. Army, for Appellee.

Opinion of the Court

George W. Latimer, Judge:

Petitioner was convicted by a general court-martial of stealing a certain quantity of drugs and narcotics from the kit of an Army doctor, in violation of Article 121, Uniform Code of Military Justice, 50 U. S. C. § 715. He was sentenced to be dismissed from the service and to forfeit all pay and allowances. Army reviewing authorities upheld the findings and sentence. We granted the accused's petition to determine whether the law officer erred in failing to give a requested in-

158

struction on the effect of character evidence.

The nature of the question involved here does not require us to give, in detail, the facts of the case. Suffice it to say a Lieutenant Taber, upon returning to Fort Campbell, Kentucky, after being gone for the weekend, found that certain drugs and narcotics were missing from his medical kit. Upon further investigation, the missing drugs were found in a footlocker belonging to the accused. He gave a pretrial statement in which he admitted taking the property and this statement was offered and properly received into evidence. He also testified at the trial, after being apprised of his rights, and again admitted the larceny. In substance, he stated: that he arrived back at the barracks late one night; that he was not feeling well; that he went to see Lieutenant Taber, a Medical Corps officer, to get some medicine; that upon entering the room he remembered the lieutenant had left for the weekend; that he noticed the medical kit belonging to the lieutenant and opened it; that he was just looking for an APC; that when he saw the other medicines he thought he would take a few of them because he figured they might cure his headaches; that he concluded it would not hurt to take a few of them; that he recorded on a piece of paper each type of drug; and, that he later looked up their composition and use.

Defense counsel brought out at the trial that the accused had had a long and outstanding record in the Army and that he had previously been honorably discharged and had reenlisted. He also introduced a number of depositions taken from former Army men who knew and who had worked with the accused in the past. The substance of their testimony was that the accused was a person of good character and his reputation for truth and veracity was good. At the close of the evidence for both sides, and before the law officer gave his instructions to the court-martial, defense counsel submitted the following requested instruction:

"Your [sic] are instructed as a matter of law that evidence of the accused's good character, in a case of this type, may be sufficient in itself to create a reasonable doubt as to his guilt."

The law officer refused to give this instruction; but what is more important, he failed to give any instruction on the effect of character evidence. Petitioner contended that was reversible error and we authorized an appeal to consider that contention.

We held in United States v. Grady Phillips (No. 1244), 3 USCMA 137, 11 CMR 137, decided this date, that in proper cases a law officer should give an instruction on the effect of character evidence when it is requested and that failure to do so is error. There, however, we considered the offense of sodomy which was established principally by the testimony of the pathic. His testimony was contradicted by the accused when the latter took the witness stand to testify in his own defense. The result of trial depended, to a large extent, upon who the fact-finders concluded was telling the truth. In that setting, character evidence might be controlling on credibility, and we felt that a failure to guide the court-martial on the weight it could give that type of evidence was prejudicial. Further, we concluded that character evidence might, in and of itself, refute evidence that an accused had committed an offense so revolting as sodomy. We believed it was not unreasonable to conclude that evidence of good character might be influential in convincing the court-martial members that accused would not commit such an offense.

In the case at bar we are concerned with an entirely different setting. The posture of the evidence in the record renders unnecessary a determination of whether a court-martial might be influenced to find an accused not guilty because of his good character. Accused, by his own statements, admitted the commission of the offense. Under those circumstances, if the court-martial placed credence in his testimony and concluded he was telling

the truth it would only strengthen the Government's case.

In his pretrial statement the accused stated in part:

"... I wanted to see the Doc (Taylor) [sic] and get something. I went to his room (10) and he wasn't in. I got his kit down and looked for APC's. I saw a lot of other pills and I decided to take a few of each. ..."

His testimony at the trial was substantially the same. On direct examination he stated:

"... I went to see Lt. Taber, and then realizing after I put his light on and went in his room that he already told me he was going home for the weekend—I had forgot all about it—and so when I snapped the light on, as I started out I noticed his aid kit. I says 'Well, it can't do no harm if I take an APC or two,' so I took his kit down, opened it up and looked for an APC. During the course of that I noticed all these other pills, capsules, everything else.

"Q. How many types were there? How many different colored pills and capsules?

"A. I don't know exactly; I believe I took a few of each. I would say at least ten."

When later asked by his counsel as to what he planned to do with the property he had taken, the accused replied.

"Well, that's hard to say. I probably would have just carried them around, or thrown them out."

It is abundantly clear from the entire record of trial, that the accused admitted the taking but sought to justify his act by showing that his conduct was nothing more than a thoughtless prank; that he was to derive no benefit from the stolen drugs; that he took them out of mere curiosity and a desire to see what they were; and that he failed to appreciate the seriousness of his acts. A reading of his counsel's closing arguments places accused's testimony in the proper perspective. It did not establish a defense of merit. It suggested reasons in mitigation of the sentence.

The futility, or the stupidity, of a larceny is of no consequence in the eyes of the law as far as the guilt of the accused is concerned and it does not constitute a defense of the crime. Once the crime is admitted, character evidence is of no effect. The prime reason, that a person of good character would probably not commit the offense, is destroyed by the admission. Many crimes are futile, meaningless, and often of no benefit to the accused and particularly is this true in larceny. In that offense the law requires that it be proven that the accused wrongfully took property of some value from the possession of the owner with an intent permanently to deprive him of the property. The accused by his testimony from the witness chair freely admitted all of those elements. By his judicial admission he took the drugs, knowing he had no right to them; they were of some value, although their worth may have been small; and he intended to keep them around, or maybe throw them away. We thus have a situation where the prosecution evidence established the guilt of the accused and his testimony was in agreement. When that is the posture of the testimony the case is not one which requires an instruction to be given. With the commission of the offense conceded, character evidence would be relevant only for extenuating purposes and it was so used in this case. It is only in proper cases that refusal to instruct on the effect of character evidence is error and this cannot be considered that type of case.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.