UNITED STATES, Appellee

v

SHELTON S. HARRELL, III, Private First Class, U. S. Marine Corps, Appellant

9 USCMA 279, 26 CMR 59

No. 10,552

Decided May 29, 1958

*Lieutenant (jg) Joseph A. Califano, Jr.,* USNR, argued the cause for appellant, Accused. With him on the brief were *Commander H. H. Brandenburg,* USN, and *Lieutenant Colonel Mary L. Condon,* USMCR.

*Commander Louis L. Milano,* USN, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Charles H. Beale, Jr.,* USMC.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Following his conviction upon five specifications alleging wrongful possession of marijuana and four specifications involving use of that narcotic,[1] the accused was sentenced to dishonorable discharge, total forfeitures, confinement at hard labor for five years, and reduction to the grade of private. Intermediate appellate authorities have affirmed the findings, but reduced the confinement to four years. We granted a petition for review to determine the correctness of the law officer's refusal to instruct the court-martial on the effect of evidence of the accused's good character as requested by the defense.

A recitation of the facts will serve to put the single issue in its proper perspective.

One Private Gunn, appearing as a prosecution witness, described two separate incidents in which he participated with the accused in the wrongful possession and use of marijuana. The first allegedly occurred January 29, 1956, and the second between February 10 and March 23, 1956. Toward the close of that year he was apprehended by the authorities as a marijuana user. During the course of his confinement he decided to cooperate with the Criminal Investigation Section of the Base Provost Marshal's Office by supplying that agency with the names of other users of the contraband. In return for this information he was promised immunity from prosecution. Among those named by Gunn was the accused.

---

[1] Article 134, Uniform Code of Military Justice, 10 USC § 934.

280

Armed with this information two investigators apprehended the accused, and, in a lawful search of his wall locker, discovered a small quantity of a brown leafy substance in the pocket of a jacket. Upon subsequent analysis, this was identified as marijuana. Questioned about this discovery he denied all knowledge of its presence, declaring the jacket was the gift of a friend who had been discharged several months earlier and he had never worn it. Later that day he wrote out a statement in which he admitted using marijuana on at least three occasions in the Spring of 1956, but asserted that he had discontinued the practice when his intended wife protested.

The final set of charges involved the possession and use of this narcotic on three separate dates while in confinement awaiting disposition of the other charges. The circumstances of each offense were described by a fellow inmate of the stockade.

At his trial, the accused gave a brief summary of his military background, declaring that prior to enlisting in the Marine Corps, he had served four years in the Army. This tour of duty included a considerable amount of combat in Korea and was terminated by an honorable discharge. He denied that he was with Gunn on January 29th. Rather, he said, from the evening of January 28th until the early morning of January 31st, he was at the apartment of a girl he expected to marry. The girl in question, a married woman who planned on divorcing her husband, corroborated the accused's alibi. The court-martial acquitted him of the two offenses allegedly occurring January 29, 1956.

While admitting the voluntariness of his pretrial statement, he branded it as a lie. In explanation, he declared he was upset by his apprehension and wanted to get away as soon as possible; that he expected to be given an administrative undesirable discharge as a result of his statement. In fact, he protested, he had never used marijuana, and reiterated his pretrial denial of knowledge of the contents of the jacket.

At the conclusion of the trial, the defense counsel submitted a request for an instruction to the effect that the accused's honorable discharge is evidence of good character, and, considered alone or in connection with the presumption of innocence and all other evidence, it was sufficient to raise a reasonable doubt of guilt. The law officer refused to give the instruction requested, and no instruction concerning character evidence was imparted.

The defense now contends that in view of the evidence of the accused's honorable discharge, the refusal to instruct as requested prejudiced the accused.

Unquestionably, evidence of an accused's good character as attested by an honorable discharge is admissible in a trial by court-martial, and, generally, must be considered on the question of guilt or innocence. United States v Browning, 1 USCMA 599, 5 CMR 27. Moreover, in a proper case, a law officer's failure to instruct on the effect of character evidence when requested constitutes prejudicial error. United States v Phillips, 3 USCMA 137, 11 CMR 137; United States v Gagnon, 5 USCMA 619, 18 CMR 243.

As in all matters relating to additional instructions, the effect of evidence of good character must be the subject of the law officer's advice only when the issue of good character is fairly raised by the evidence. Thus, where an accused judicially acknowledges his guilt, this Court has held that the law officer is not required to instruct on the effect of good character upon the issue of guilt or innocence. Such a judicial acknowledgment effectively resolves all issues in that area. United States v Dodge, 3 USCMA 158, 11 CMR 158.

In the instant case, the accused's testimony that he had been honorably discharged from the Army was not the only evidence supplied by him relating to his character. In defending against the offenses described by Private Gunn, he portrayed himself as an individual whose morals were seriously deficient

While seeking to discredit his pretrial admissions, he branded himself as a prevaricator intent upon procuring an undesirable discharge. Had this intent been realized his discharge would have been fraudulently obtained, for with his next breath he denied ever using marijuana. Thus, by depicting his own immorality, prevarication and attempted fraud, the accused completely demolished whatever effect the evidence of his honorable discharge might otherwise have. When the accused left the stand, there was literally no evidence of good character.

It follows that there was no foundation in the evidence for the defense request. Consequently, the law officer did not err by rejecting it.

The decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur.

There is no dispute about the general principle that an honorable discharge is admissible in a trial by court-martial as evidence of accused's good character. United States v Gagnon, 5 USCMA 619, 18 CMR 243. But that rule does not require us to hold that prior satisfactory military service raises a character issue in all instances. Here the accused received his honorable discharge from the Army on January 29, 1952. Almost five years later he committed at least seven offenses involving the use and possession of marihuana. The question in the case at bar then is simply whether the evidence of his prior service is relevant and of sufficient weight to require the law officer to give a requested instruction on character at the time of the offense.

The character at an earlier time of one on trial for an offense is only relevant to his guilt or innocence if the record does not show it was substantially changed during the intervening period. The theory behind the admissibility of the evidence is that proof of prior good character shows the improbability of the accused committing the particular offense, but the time his character must be determined is when the crime is committed. Therefore, if the prior good character is nonexistent at that particular time, the testimony has no relevancy and no weight need be accorded it by the court-martial. I suppose that had there been no evidence in the record to the contrary, it might be inferable that accused's good character in 1952 casts light on his conduct in 1956. However, the accused, by his own evidence, proved that no reasonable person could conclude his character as a man had not changed in the interim and there was not one iota of other evidence which tended to suggest his character was good at the time he became enmeshed with the law. When that condition prevails, an instruction is not required.

So that no one will misunderstand my position—and, I assume, that of the Chief Judge—it is not the offenses charged which destroy the base for the instruction, it is the self-confessed lack of character by the accused, about which there is no factual dispute, which renders his prior good conduct irrelevant and immaterial.

FERGUSON, Judge (dissenting):

I deeply regret that my brothers attach such slight significance to the honorable characterization of a period of military service. In my opinion, the Court's holding today has the effect of reducing the value of an honorable discharge certificate to the price of the paper upon which it is printed. I had always believed that the issuance of an honorable discharge certificate to a member of the military service was a glowing testimonial that the recipient was a person of good moral character who had served his country well and faithfully. Perhaps I was mistaken, but, if so, I find some consolation in knowing that I am in the excellent company of others who share my mistaken belief.

The Congress of the United States has consistently recognized the importance of honorable military service by bestowing valuable rights and privileges upon those who have received honorable discharges. Just recently, the Supreme Court of the United States held the issuance by the Secretary of the Army

of a discharge certificate in form other than honorable, when the petitioner was entitled under pertinent Army regulations to an honorable discharge, resulted in "judicially cognizable injuries." Harmon v Brucker, 355 US 579, 78 S Ct 433, 2 L ed 2d 503. The framers of the Manual for Courts-Martial, United States, 1951, understood the import of an honorable discharge by providing that an accused in order to show the probability of his innocence could "introduce evidence of his own good character, including evidence of his military record and standing." Paragraph 138*f*(2) of the Manual, supra. See also United States v Gagnon, 5 USCMA 619, 18 CMR 243. Profesor Wigmore, in his monumental work on the law of evidence, had this to say concerning the use of an honorable discharge to show good character:

*"A certificate of honorable discharge* from the United States Army or Navy, assuming it to be admissible by exception to the hearsay rule (*post,* § 1675*a*), should be liberally construed, *i. e.* as importing not merely general good character, or the specific traits mentioned, but any other of the fundamental moral traits that may be relevant in criminal cases. The soldier is in an environment where all weaknesses or excesses have an opportunity to betray themselves. He is carefully observed by his superiors,—more carefully than falls to the lot of any member of the ordinary civil community; and all his delinquencies and merits are recorded systematically from time to time on his 'service record', which follows him throughout his army career and serves as the basis for the terms of his final discharge. The certificate of discharge, therefore, is virtually a summary of his entire service conduct, both as a man and as a soldier. When it is 'honorable' in its import, it implies a career successfully negativing all of the more common traits involved in criminal charges. In this respect it is therefore more comprehensive than the ordinary community-repute (*post,* § 1608) to general good character, and is entitled to be used on behalf of an accused on virtually any specific charge of serious crime. In view of the high moral value attached to an honorable discharge in the military community, and of the vast numbers of men who saw service in the World-War, it is fitting that the evidential import of such certificates should be liberally recognized." [Wigmore, Evidence, 3d ed, § 59.]

It is indeed unfortunate that this Court concludes that there was "no foundation in the evidence" to support the request for instruction on good character.

I believe that evidence of honorable discharge can always raise the issue of good character so as to require instructions. The facts in the instant case would certainly present no exception. Here, the accused had pleaded not guilty to the offenses charged and vigorously maintained his innocence. The strength of the Government's case rested largely upon the testimony of one Gunn, an admitted "heavy user" of marihuana and heroin, whose testimony was obtained at the price of a letter of immunity relieving him from criminal prosecution for narcotics violations. The witness willingly acknowledged that he disliked the accused because the latter at one time damaged his car. In addition, it was shown that the witness had previously been court-martialed for the theft and the subsequent sale of identification cards.

Taking the stand in his own defense, the accused denied the possession and use of the marijuana within the period covered by the specifications. He testified that he had served in the United States Army for four years during which time he had seen considerable combat duty in Korea. He was awarded an honorable discharge at the termination of his Army service and subsequently had enlisted in the Marine Corps. When the law officer inquired of counsel regarding instructions, defense counsel specifically requested an instruction on good character based upon the accused's receipt of an honorable discharge. Without any apparent reason, the law officer summarily rejected the request.

Aside from my beliefs concerning the efficacy of an honorable discharge, there are additional reasons why I consider the majority's opinion incorrect. Here, defense counsel specifically requested the instruction. It would have imposed but a slight burden on the law officer to give the instruction, yet it might well have been of incalculable benefit to the accused. United States v Offley, 3 USCMA 276, 12 CMR 32. Under the circumstances, I consider it an abuse of discretion on the part of the law officer to arbitrarily refuse to give the instruction.

Another defect contained in the principal opinion is the implication that evidence of bad character cancels out and nullifies evidence of good character so as to eliminate the necessity of an instruction on that issue. I had always believed that where evidence was in conflict it became a question of fact to be determined by the court-martial under proper instructions. Admittedly, there was damaging evidence regarding the accused's character, but, on the other hand, there was very favorable evidence of his good character attested to by the fact that he had received an honorable discharge. The weight to be accorded this evidence was exclusively a matter within the court-martial's discretion. Here, the law officer usurped the functions of the finders of fact by refusing to submit the issue as requested.

Although I content myself with filing this dissent, I can only hope in the words of Mr. Justice Frankfurter "that the present decision will turn out to be an isolated deviation from the strong current of precedents—a derelict on the waters of the law." Lambert v California, 355 US 225, 78 S Ct 240, 2 L ed 2d 228 (dissenting opinion).