UNITED STATES, Appellee

v

CHARLES L. COOPER, Private First Class,
U. S. Army, Appellant

15 USCMA 322, 35 CMR 294

No. 18,185

April 23, 1965

*Captain Richard P. Delaney* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Jacob Hagopian*.

*Captain Richard J. Andriolo* argued the cause for Appellee, United States. With him on the brief were *Colonel Edwin G. Schuck, Lieutenant Colonel Francis M. Cooper, Captain John F. Webb, Jr.,* and *First Lieutenant Frank J. Penna.*

## Opinion of the Court

FERGUSON, Judge:

Tried before a general court-martial convened at Fort Knox, Kentucky, the accused was found guilty of attempting to strike his superior officer, in violation of Uniform Code of Military Justice, Article 90, 10 USC § 890, and communicating a threat, in violation of Code, supra, Article 134, 10 USC § 934. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years. The convening authority reduced the term of confinement to twelve months, approved the forfeitures and bad-conduct discharge, but suspended the latter for the period of confinement and six months thereafter. The board of review affirmed, and we granted accused's petition for review on the issue whether the law officer erred in failing to grant a defense motion for mistrial, based upon his failure to give an instruction regarding the effect of evidence of the accused's good character prior to the return of findings of guilty.

I

The factual background of accused's alleged offenses is unimportant. Suffice it to say that the prosecution's witnesses tended to establish that Cooper, in a drunken condition, was disrespectful to his commanding officer, threatened his life, and initiated an attack upon his person. Considerable lay evidence was adduced by the defense tending to establish the alleged acts occurred while accused was not mentally responsible for his behavior. In addition, proof was introduced which demonstrated his good

**323**

soldierly character. Indeed, even his accuser characterized him as "one of the best in the company," while others variously declared "he is a fine man," his work had "been very fine," and he "was the only man I could depend on."

Based on this evidence, the law officer, in an out-of-court hearing, expressed the view that "good character is in issue in this case" and advised counsel that he would give the court an appropriate instruction thereon. Inexplicably, however, the advice was not given, and the court-martial returned findings of guilty without the benefit of any charge in this regard.

Following announcement of the verdict, the usual presentencing proceedings were had, including receipt of evidence of a previous conviction for similar misconduct. After the court members had retired to consider the question of accused's punishment, the law officer called an out-of-court hearing in which he disclosed that he had become aware of his failure to give an appropriate instruction on the effect of the character evidence. He proposed to correct the omission by recalling the court, appropriately instructing it on the issue, and having it thereafter revoke its earlier findings and vote again on the issue of guilt or innocence. Defense counsel objected to the procedure on the basis that "human nature being such as it is, they would give this no consideration and just adhere to the previous findings."

The law officer nevertheless refused to declare a mistrial in view of the error and had the court members summoned from their deliberations. Thereafter, he advised them properly concerning the effect of the evidence of good character; informed them it would be appropriate to revoke the findings of guilty, and reconsider the matter in light of his new instructions; and ordered them into closed session for that purpose.

The court, however, upon reopening, announced it had determined not to revoke its former findings and to

324

reballot on the question of accused's guilt or innocence. Instead, it had elected to vote upon and decide the issue of accused's sentence. Following further instructions from the law officer and a statement of his belief that he had committed reversible error in failing to instruct it prior to findings, it again closed and thereafter revoked its former findings of guilty; reballoted on the issue in light of the instruction on character evidence; and again found the accused guilty. Thereafter, it closed once more, deliberated on the question of punishment, and reconvened to announce the sentence set out above.

II

Basically, the issue before us is whether an instructional omission by the law officer may be cured by having the court-martial revoke its findings of guilty and deliberate again on the issue of guilt or innocence after having received proper instructions. There can be no doubt that, as the law officer properly recognized, the evidence placed in issue the question of accused's good character and, upon request, entitled him to a proper instruction on the effect thereof. United States v Harrell, 9 USCMA 279, 26 CMR 59; United States v Gagnon, 5 USCMA 619, 18 CMR 243; United States v Browning, 1 USCMA 599, 5 CMR 27. Nor can it be argued here that entitlement to the instruction was waived when it appears from the record the law officer affirmatively indicated to counsel his intention to give the instruction and did not thereafter inform them of any change in his ruling or permit an opportunity to object to its exclusion from the advice. Cf. Colbert v United States, 146 F2d 10 (CA DC Cir) (1944); Hawley v United States, 133 F2d 966 (CA 10th Cir) (1943); McAffee v United States, 105 F2d 21 (CA DC Cir) (1939). Thus, the real question is whether a prejudicial instructional error or omission may be cured by the procedure followed here.

The Government argues the actions

of the law officer and court were entirely proper, pointing out that, under military procedure, a "court may also reconsider any finding of guilty on its own motion at any time before it has first announced the sentence in the case." Manual for Courts-Martial, United States, 1951, paragraph 74*d* (3). This Manual provision grew out of similar procedure laid down in its predecessor volumes. Manual for Courts-Martial, U. S. Army, 1949, paragraph 78*d*; Manual for Courts-Martial, U. S. Army, 1928, paragraph 78*d*. It is interesting to note, however, that reconsideration of the findings was prohibited under the 1928 Manual, supra, after the court had reopened for the purpose of conducting the presentence inquiry. United States v Monaghan, 33 BR 243. Be that as it may, the Manual provision is not designed as a substitute for declaration of a mistrial. Cf. United States v Johnpier, 12 USCMA 90, 30 CMR 90. The Manual rule appears in a discussion of the procedure to be followed in voting on the findings; it is intended to permit reconsideration of the verdict, as an ameliorative measure, in light of the development of new matter in the presentence proceedings. It necessarily assumes that such findings were validly reached and are to be reconsidered by the fact finders as, for example, when additional evidence bearing on guilt or innocence comes to their attention. Compare United States v Monaghan, supra. There is not the slightest indication that this lack of finality to a verdict of guilty was intended in any way to serve the law officer as a device whereby he might correct earlier instructional omissions through causing reconsideration, *nunc pro tunc,* of findings which had been earlier announced. Indeed, despite the numerous instances in which such errors have occurred, we are not aware of a single case, nor has such been called to our attention, in which the cited Manual provision has been considered authority for rolling back the trial to its prefindings stage in order to overcome errors of this nature. Indeed, we note the Code expressly places the duty upon the law officer to instruct the court "[b]efore a vote is taken on the findings" and not thereafter. Code, supra, Article 51, 10 USC § 851. Such procedure is consonant with the intent of the Congress "to bring the system a little further into harmony with civilian methods" and largely to adopt the concept of separating the functions of the judge and the fact finders in military law. Cf. United States v Rinehart, 8 USCMA 402, 24 CMR 212; 96 Congressional Record 1387, *et seq.* (1950); Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, pages 74–78. We reject, therefore, the Government's argument that the right of a court-martial to reconsider its findings of guilty at any time before sentence is announced may be utilized to correct errors and omissions in prefindings instructions.

Turning to other authorities, we find the general rule applicable to such situation to be stated as follows:

"The court has the power, and it is its right and duty, either with or without request, and at any time during the trial, to withdraw or to correct its instructions to the jury, if, on reflection, it is considered that they have been erroneously or unnecessarily given; and even though the jury have retired they may be recalled for such purpose." [23A CJS, Criminal Law, § 1322.]

Such corrections may clearly take place "at least prior to the time that the jury retires to deliberate." Byas v United States, 182 F2d 94, 98 (CA DC Cir) (1950). Indeed, they may be made after the jury has retired for its deliberations but has not yet returned a verdict. Baker v United States, 156 F2d 386, 390 (CA 5th Cir) (1946). See also 23A CJS, supra, § 1376; Elms v State, 53 Okla Crim 268, 10 P2d 728 (1932); People v McNeal, 160 Cal App 2d 446, 325 P2d 166 (1958); and State v Smith, 21 NJ 326, 121 A2d 729 (1956). But no authority has been found or cited before us which authorizes the correction of instructions after the fact finders have completed their deliberations and returned a verdict in open court.

**325**

In light of these well-defined principles, we believe the correct rule to be applied in military law ■■■■■■ is that, as noted in the authorities set out above, it is the right and duty of the law officer to recall the court and correct any error or omission in his charge at any time prior to its return of a proper verdict. Byas v United States; Baker v United States, both supra. Application of this rule gives the widest possible latitude to the trial judge to correct error at the *nisi prius* level and to avoid prejudice to the accused through permitting the court to deliberate without proper guidance. At the same time, the accused remains protected from the dangers inherent in attempting to have the members, as here, reconsider with open minds and under proper instructions an issue which they have already settled to their own satisfaction, albeit without correct advice concerning the applicable law. Cf. United States v Banmiller, 310 F2d 720 (CA3d Cir) (1962). Such a situation is particularly well presented by the facts before us, which demonstrate the possibility of harm to an accused by attempting *nunc pro tunc* corrections. Thus, this court had already heard much new matter in mitigation and extenuation and received evidence of a previous conviction for similar misconduct in the past, when it was asked again to consider the issue of guilt or innocence in light of the instruction on character evidence. It expressly demonstrated its reluctance to go once more into that issue by an initial refusal to revoke its earlier findings and reballot, and simply sought to continue to deliberate on the question of punishment. Indeed, it was only when the law officer expressly pointed out that his earlier omission would lead to appellate reversal that it agreed to follow his suggestions at all. The dangers inherent in allowing such retroactive instructions are thus made painfully apparent on this record and reinforce us in our conclusion that, once the harm is done and the verdict is in, proper criminal trial procedure does not permit the Gordian knot to be so easily sliced.

Accused having presented evidence of his good character and the intended instruction not having been delivered to the court prior to its return of findings of guilty, it is apparent that prejudicial error was committed, particularly in light of the substantial issue which existed regarding accused's mental responsibility for the alleged acts. The error, as we have noted, could not be purged by the law officer's *nunc pro tunc* action, and, accordingly, a mistrial should have been declared. As it was not, reversal is necessitated.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.