UNITED STATES, Appellee

v

JOHN P. MATHIS, Sergeant, U. S. Army, Appellant

17 USCMA 205, 38 CMR 3

No. 17,533

August 18, 1967

*Captain John Kagel* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Major David J. Passamaneck,* and *Captain Paul V. Melodia.*

*Captain Maurice Jay Kutner* argued the cause for Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski* and *Lieutenant Colonel David Rarick.*

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Fort Leavenworth, Kansas, charged with premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. He pleaded not guilty but was found guilty as charged. He was sentenced to a dishonorable discharge and confinement at hard labor for life. The convening authority approved the sentence. A board of review in the office of the Judge Advocate General of the Army affirmed the finding of guilty and the sentence.

Before considering the issues enumerated in the appellant's petition for review, the reader must be told that the case now before us is a rehearing. Accused was originally tried and convicted in October 1963, at Frankfurt, Germany, of the identical charge and specification. That court-martial imposed a sentence of dishonorable discharge, total forfeitures, confinement at hard labor for life, and reduction in grade. Intermediate authorities approved both the findings and sentence. We then granted Mathis' petition to consider the law officer's instruction

on insanity and whether the board of review erred in denying appellant a new mental examination. The latter issue was rendered moot for, subsequent to the board of review action, accused was psychiatrically examined by a board of medical officers at Fitzsimons General Hospital, Denver, Colorado. However, of the former we found reversible error where the law officer used, for instructional purposes in the sanity area, a version of the so-called "policeman at the elbow" test. See United States v Mathis, 15 USCMA 130, 35 CMR 102.

In neither the original trial, nor rehearing, can it be said that there existed a factual issue as to the actual killing for in each the appellant admitted his complicity in open court and also by way of a pretrial statement. However, appellant's sanity has always been in issue with the testimony of witnesses for both sides making it a controverted question of fact. Indeed, since the beginning of courtmartial proceedings, his defense has been premised on that ground for it affects the question of criminal intent.

Of the several issues assigned by the accused in his present petition for review, two in particular demand that we reverse the decision of the board of review. The first concerns a portion of the instruction going to the problem of determining the credibility of witnesses. In reference to this matter, the law officer instructed in part:

". . . if you believe that a witness has wilfully sworn falsely to a material fact in the case, you may disregard his testimony in whole or in part, except insofar as it may have been corroborated by other credible evidence."

This Court has consistently held the giving of such an instruction to be prejudicial error. United States v Robbins, 16 USCMA 474, 37 CMR 94; United States v Byrd, 16 USCMA 488, 37 CMR 108; United States v Silver, 16 USCMA 611, 37 CMR 231; United State v Gaston, 16 USCMA 626, 37 CMR 246; United States v Showalter, 16 USCMA 487, 37 CMR 107; United States v Patterson, 17 USCMA 196, 37 CMR 460. In the recent case of United States v Schoenberg, 17 USCMA 145, 37 CMR 409, we said of this prejudicial instruction:

". . . While it is suggested the evidence of guilt is compelling and that the error's effect may thereby be overcome, such a rationale fails to give heed to the exclusive right of the fact finders to weigh credibility and to reject testimony for any reason, as well as the necessity that they find guilt is established by the evidence beyond a reasonable doubt. The instruction, however, forbids the court members so to reject testimony which they find to be corroborated, even though they believe it to have been given by one who has perjured himself. Such a restriction on the lawful function of the court cannot stand and, when made a part of the instructions of the law officer, we will not pause to speculate whether there was testimony which the jury might have, but for the erroneous advice, rejected. United States v Robbins, supra."

We also believe appellate defense counsel correct in contending that the law officer prejudicially erred in failing to give a requested defense instruction on good character. At least two witnesses testified for the Government, and, in so doing, told the court that Mathis was, in sum, an efficient, well-trained, outstanding soldier and noncommissioned officer who had never been a disciplinary problem.

Accordingly, defense, later in the proceeding, requested the law officer to include in his instructions one relating to good character. The law officer first acquiesced but then reneged, saying:

"THE LAW OFFICER: Before we call back the court we will have now a short continuation of this hearing. Now, I have read over the proposed character instructions and it says 'such evidence may indicate to you that it is impossible that a person of good character would commit the crime charged.' There is no doubt

**207**

in this case, Major Dribben, that the accused has committed the act?

"THE DEFENSE: No sir.

"THE LAW OFFICER: So it is not a question of whether he has committed or not but his mental responsibility; so I don't think character is a proper instruction and I reverse myself 180 degrees and I will not give that request."

The error in the law officer's rationale, clearly revealed by this colloquy, is that not every homicide amounts to a crime and it is only the former which is admitted by the defense. That a crime of any degree was committed is a conclusion they totally reject.

The instructional omission, then, is not only error but is necessarily prejudicial for good character ■ alone is sufficient to provide a reasonable doubt as to guilt (United States v Sweeney, 14 USCMA 599, 34 CMR 379, and cases cited therein), and, under the circumstances of this case, should have been given. United States v Cooper, 15 USCMA 322, 35 CMR 294; United States v Harrell, 9 USCMA 279, 26 CMR 59; United States v Sitren, 16 USCMA 321, 36 CMR 477; United States v Flippen, 16 USCMA 622, 37 CMR 242.

Another assigned error requiring comment involves an instruction on justifiable homicide. In the instant proceeding, the following instruction relative to this issue was given:

". . . you are advised that the accused was *under a duty to exhaust all available means of preventing the act of sodomy upon himself, by a warning or a show of force or use of such force short of killing before he would be justified in killing Plater.* In addition, if you find that the killing took place after the completion of the offense of sodomy and was not necessary to prevent repetition or continuation of the offense, then the killing was not or would not be justified. You are advised that a killing reasonably appearing to be necessary to prevent the commission of a violent, atrocious offense such as nonconsensual sodomy, is justified and excusable and, if you so find, the accused must be acquitted." [Emphasis supplied.]

We know not what the evidence will show should this case be reheard. If ■ the law officer there determines that this issue is raised, we believe it only fair to say that the limitation imposed upon the accused is one of apparent necessity, nothing more. To the extent that the above instruction seemingly imposed additional burdens—irrespective of necessity—it is wrong. See State v Nodine, 198 Ore 679, 259 P2d 1056 (1953), and the numerous authorities displayed therein; cf. United States v Lee, 3 USCMA 501, 13 CMR 57.

Turning to other matters, we offer the following comments. The law officer instructed the court, ■ as to evidence of other misconduct, that such evidence was to be disregarded except as to its possible bearing on the question of mental responsibility; "he may have been a bad boy in engaging in such activities but if he is to be convicted today, he must be proved guilty beyond a reasonable doubt of the offenses presently charged."

In United States v Donley, 15 USCMA 530, 531, 36 CMR 28, we observed that such an instruction was fatally defective in that it "fail[ed] to advise the court members that they might not convict the accused because he was a bad man, nor consider such evidence in determining his guilt or innocence of the offense charged."

Appellate defense counsel also complain accused was prejudiced because the court-martial had the ■ use of a portion of the law officer's written instructions in closed session. This came about after the law officer reinstructed the court on a seeming ambiguity. Following this, the court asked for, and received, the written form. Other written instructions were not given the court for they were full of "interlineations and extraneous matters." De-

fense specifically agreed to the procedure utilized. United States v Caldwell, 11 USCMA 257, 29 CMR 73, relied on by the defense, is totally distinguishable for the unrecorded private notes made by an individual court member were used by that court in secret session.

The instruction covering the question of sanity is eminently correct. Cf. United States v Mathis, supra; United States v Oakley, 11 USCMA 187, 29 CMR 3.

The defense argument that the lesser included offense of involuntary manslaughter was raised by the evidence and, therefore, should have been the subject of an instruction is without merit. Defense makes the argument that the instructions should have been given because the record demonstrates that accused did not intend to kill. This argument ignores the fact that an intent to inflict great bodily harm must also be—but was not—negated. United States v Moore, 16 USCMA 375, 36 CMR 531, is distinguishable on the facts. Accused testified he had only intended to shoot in front of the victim to prevent his escape. If believed, such testimony would negate both intent to kill and intent to inflict great bodily harm. Cf. United States v Taylor, 16 USCMA 489, 37 CMR 109. Manual for Courts-Martial, United States, 1951, paragraph 198b; Article 119(b), Uniform Code of Military Justice, 10 USC § 919.

Neither did the law officer err in failing to instruct the court that a partial mental impairment, as exhibited by unreasonable but honest fear and anger, could negate malice and thus reduce unpremeditated murder to voluntary manslaughter. In sum, the defense here asks that we apply the doctrine of imperfect self-defense. In the past, we have consistently rejected such overtures for the provocation adequate to engender the uncontrolled fear and anger necessary to reduce murder to voluntary manslaughter must be tested by reasonableness. United States v Maxie, 9 USCMA 156, 159, 25 CMR 418, and cases cited therein.

In covering the elements of unpremeditated murder, the law officer specifically and correctly enu- erated the essential elements including "(d) That at the time of the killing the accused intended to kill or inflict great bodily harm." Thereafter, he further advised the court:

". . . I tell you that unpremeditated [murder] requires a general criminal intent to kill or inflict great bodily harm. A general criminal intent is that frame of mind that accompanies the deliberate conscious and intentional doing of an act, the natural and probable consequence of which must be apparent to any legally responsible person performing the act. It may be inferred from all the circumstances. A person who intentionally and wrongfully uses a weapon or means capable of inflicting serious bodily harm or death in such a manner that death or great bodily harm is a likely result then may be held criminally responsible for the death of that person that results from the act of using such instrumentalities. But this inference is not mandatory and the court need not draw it. Since unpremeditated murder is a general criminal intent offense, partial mental impairment is not a defense to unpremeditated murder."

This instruction is patently erroneous in light of our recent opinion in United States v Thomas, 17 USCMA 103, 37 CMR 367.

Lastly, we reject the contention that the board of review erred by not granting a psychiatric examination on "uncontradicted evidence of a suicide attempt by appellant after trial during an acute psychotic episode." As the Government notes, the accused has, in fact, had further psychiatric evaluation since the "suicide attempt." Accordingly, this immediate issue appears to be moot. United States v Mathis, supra.

The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

My views as to the instruction on credibility of witnesses are set out in my dissent in United States v Schoenberg, 17 USCMA 145, 37 CMR 409. I adhere to them; and disagree with the majority's conclusion that in the circumstances of this case they were prejudicial.

I also disagree with the majority as to the omission of an instruction on good character. The killing was conceded. In his own testimony, the accused admitted he repeatedly stabbed the victim with a knife; he admitted he went approximately ninety feet to get a rock, which he used to smash the victim's head; and he admitted he carried away the rock to hide it. In the face of these judicial admissions, an instruction that good character alone may raise a reasonable doubt that the accused committed the offense charged is a mere abstraction.

The only genuine issue in the case was the accused's sanity. This was announced in defense counsel's opening statement when he told the court members that the accused was "not guilty by reason of mental irresponsibility." The defense theory was that the accused had an "intensive hate" for homosexuals, and this hate caused him to commit the homicide. According to the accused's testimony, the killing was "arranged . . . by . . . something . . . stronger than any human force." The psychological and psychiatric testimony for the defense dealt with the same relationship. Dr. Philip I. Marks, a clinical psychologist, testified that, in his opinion, the act of sodomy between the accused and Plater, the victim, precipitated a psychotic episode and the accused's judgment "was so impaired that he could not distinguish right from wrong and felt that he had to destroy Plater and did so." The psychiatric testimony is substantially to the same effect. In this context, evidence of the accused's good character was immaterial. In my opin-ion, the law officer correctly denied the requested instruction. United States v Dodge, 3 USCMA 158, 11 CMR 158; United States v McPhail, 10 USCMA 49, 27 CMR 123.

Turning to the instruction on justifiable homicide, I disagree with the majority for two reasons: (1) The issue was not reasonably raised by the evidence. In his pretrial statement, which is the source of the evidence of an act of sodomy between the accused and Plater, the accused admitted he did not "overtly resist." No evidence indicates any sort of resistance to the act. On the contrary, the only reasonable inference is that the accused voluntarily participated in the act. How then can it be said that the accused was justified in killing Plater to prevent the commission of sodomy? Cf. United States v Weems, 3 USCMA 469, 13 CMR 25. (2) The instruction was requested by the defense; consequently, it can hardly now be urged as reversible error. United States v Jones, 7 USCMA 623, 23 CMR 87.

The "bad man" instruction also presents no ground for reversal. Assuming the instruction to be ambiguous, the ambiguity cannot be asserted for the first time on appeal as a ground for reversal of an otherwise valid conviction. United States v Polak, 10 USCMA 13, 27 CMR 87. In any event, the evidence of uncharged acts of homosexuality was introduced by the defense as part of its case. The record indicates that all parties understood the context in which it was to be considered. See United States v Johnson, 3 USCMA 447, 454, 13 CMR 3. I am convinced, therefore, there is no fair risk of prejudice in this instruction.

As to the other issues discussed in the principal opinion, I agree with the majority. I have also considered the remaining assignments of errors and the record of trial. I have no doubt that the accused received a fair trial, free from any error presenting a fair risk of prejudice. I would, therefore, affirm the decision of the board of review.