UNITED STATES, Appellee

v

KENNETH B. WRIGHT, Private First Class,
U. S. Army, Appellant

20 USCMA 12, 42 CMR 204

No. 22,524

August 14, 1970

*Captain Paul C. Saunders* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Monte Engler.*

*Captain Edwin L. Gage* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain Willam R. Steinmetz.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial convicted the accused of taking indecent liberties with an eight-year-old girl. The conviction was affirmed by intermediate authorities. Two assignments of error are alleged in regard to instructions given by the law officer as to both the merits and the sentence.

During an out-of-court hearing, defense counsel submitted written requests to instruct in regard to the merits. Among these was an instruction as to the effect of character evidence, which, in part, provided that "evidence of accused's good character may be sufficient to cause a reasonable doubt to remain as to his guilt, thereby warranting an acquittal." The law officer approved the request, but when he actually instructed the court members he failed to mention the matter. The omission went unnoticed by trial counsel and defense counsel, and each expressed satisfaction with the instructions given. See Rule 30, Federal Rules of Criminal Procedure.

Evidence of good character may raise a reasonable doubt as to the accused's guilt of the offense charged for the reason that one who has consistently "followed an honest and upright course of conduct" is not likely to commit an act contrary to his character. United States v McPhail, 10 USCMA 49, 51, 27 CMR 123 (1958); Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 138. Such evidence may alone be "the factor which tips the scales" in the accused's favor. United States v Browning, 1 USCMA 599, 601, 5 CMR 27 (1952). Cf. Black v United States, 309 F2d 331, 343–344 (CA8th Cir) (1962). Consequently, when evidence of good character is before the court and the

accused requests an instruction on the effect of such evidence, it is error to deny the request. United States v Browning, supra; United States v Gagnon, 5 USCMA 619, 18 CMR 243 (1955). Inadvertent failure to include a properly requested instruction that has been previously approved is also error. United States v Cooper, 15 USCMA 322, 35 CMR 294 (1965). However, neither the denial of a requested instruction nor the failure to give a requested instruction that was approved requires reversal of an otherwise valid conviction if the "posture of the . . . case is not one which requires an instruction." United States v Dodge, 3 USCMA 158, 160, 11 CMR 158 (1953).

As defense counsel made manifest at trial, the "core" of the accused's defense was that the offense was the "product" of a psychomotor epileptic seizure induced by compulsive and chronic alcoholism. The defense theory was that the accused lost "all rational control" and suffered from total inability to adhere to the right when he was under the influence of alcohol. The accused's wife testified to a number of serious misdeeds committed by the accused when drunk. Among these were an attempt to stab her and an attempt to hit her with a whisky bottle; an attempt to stab her brother and an incident in which he threw an iron stove "downstairs on the people below." In his wife's opinion, "[e]very time" the accused drank he was "absolutely . . . crazy" and engaged in conduct that was dangerous to himself or others. The accused's brother testified to other anti-social and bizarre acts by the accused during periods of alcoholic ambulation. The accused's girl friend testified the accused had "assaulted" her "many times"; on the last occasion, she "got scared," called the police, and later talked to the district attorney. In her opinion, the accused had "a mental problem." Various witnesses testified to an assortment of other sordid acts during periods of intoxication. In addition, a clinical psychologist, testifying as a defense witness, stated that the accused felt he was a "worthless" and "undesirable person," who had no "meaningful social relations with people."

In closing argument, defense counsel observed that in a case of this kind it would be expected that the accused would produce substantial evidence of good character to refute the charge, but he could not "bring in people to show" the usual traits of good character "because they do exist"; he attributed the absence to "the peculiar nature and background and mental condition" of the accused. Referring to the evidence of good character he had been able to introduce, he noted that it related to periods and activities when the accused was not drinking. He argued that the difference in the accused represented a Dr. Jekyll and Mr. Hyde conflict in personality, and he maintained that the Mr. Hyde aspect controlled the accused at the time of the offense charged because the accused was then in the throes of a psychomotor epileptic seizure precipitated by alcohol ingestion.

So far as the act charged is concerned, the accused admitted in a pretrial statement that it took place and that he "felt nasty about it." His girl friend testified he had told her about his encounter with the little girl and that in the course thereof he "like snapped out of it" and suddenly "realized what he was doing." The clinical psychologist also testified that the accused related details of the incident to him as "he remembered the events," and his recital included the act charged. A psychiatrist, who had participated in a psychiatric evaluation of the accused, testified that the accused told him that he had been "drinking most of the day," but he remembered details of his meeting with the child. He recalled the lewd act he had asked the child to perform and that he "suddenly straighten[ed] up and step[ped] back, like waking from a dream." Similar testimony was given by another psychiatrist and by a neurologist, both of whom had examined the accused.

14

While the defense introduced some evidence of good character, it is manifest that this evidence was not intended to indicate the unlikelihood that the accused committed the offense, but rather to emphasize that, when intoxicated, the accused was mentally incapable of adhering to the right. The following question to the accused's wife and her answer at the end of her examination demonstrate that this was the purpose of all the evidence as to the accused's character, good and bad, which had been introduced by defense:

"Q. Do you feel that your husband would have done an act like this, if he had been sober?

"A. No, I know that for sure. He never would do . . . [things] like that, no."

When the commission of the offense is admitted "character evidence is of no effect." United States v Dodge, supra, page 160. It compellingly appears, therefore, that no prejudice resulted to the accused from the omission of an instruction as to the effect of evidence of good character. United States v Schultz, 18 USCMA 133, 137, 39 CMR 133 (1969).

The accused's second assignment of error deals with the failure of the law officer to instruct the court members orally as to the voting procedure to arrive at a sentence. We considered the same question in United States v Pryor, 19 USCMA 279, 41 CMR 279 (1970). We there held that submission to the court members of a writing containing the required instructions was not sufficient because the record contained "no . . . assurances" that the court members considered the writing in their determination of the sentence. We noted that the writing was "simply handed to the court by trial counsel unaccompanied by a word of advice or caution from the law officer." *Id.*, at page 280. I think this case is factually different from *Pryor*, but my brothers are of the opinion that *Pryor* is sufficiently similar to be controlling.

The decision of the United States Army Court of Military Review as to the sentence is reversed. A rehearing on the sentence may be ordered.

Judge DARDEN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree with the holding of the principal opinion that the failure of the law officer to instruct orally as to the sentence voting procedure was prejudicially erroneous. United States v Pryor, 19 USCMA 279, 41 CMR 279 (1970). At least as to that issue a rehearing on sentence is required.

I disagree with the holding of the majority that the accused was not prejudiced by the omission of an instruction as to the effect of evidence of good character. The instruction was requested in writing by defense counsel and the law officer agreed to give it; however, his failure to do so went unnoticed by counsel.

In the early case of United States v Browning, 1 USCMA 599, 601, 5 CMR 27 (1952), the late Judge Brosman, speaking for a unanimous Court, wrote:

"It is often said, with considerable merit, that character evidence —more particularly general character evidence—is of doubtful practical value to a defendant charged with crime. Nevertheless *it may become the factor which tips the scales in his favor*. Therefore, courts have repeatedly held to be reversible error a refusal to charge the jury that evidence of good character alone may be sufficient to warrant acquittal, *even though evidence of guilt may be convincing*. Edgington v United States, 164 US 361, 41 L Ed 467, 11 S Ct 72; Egan v United States, 287 F 958 (CA DC Cir); Jones v United States, 289 F 536 (CA DC Cir)." [Emphasis supplied.]

And in United States v Cooper, 15 USCMA 322, 326, 35 CMR 294 (1965), where, as here, the law officer inad-

vertently failed to give an agreed-upon instruction on the effect of good character evidence, this Court held:

"Accused having presented evidence of his good character and the intended instruction not having been delivered to the court prior to its return of findings of guilty, it is apparent that prejudicial error was committed, *particularly in light of the substantial issue which existed regarding accused's mental responsibility for the alleged acts.*" [Emphasis supplied.]

My brothers take the position that since the accused *admitted* the commission of the act, character evidence is of no effect, citing United States v Dodge, 3 USCMA 158, 11 CMR 158 (1953), and United States v Schultz, 18 USCMA 133, 39 CMR 133 (1969). These cases are distinguishable, however. In *Dodge*, a conviction for larceny, the accused testified that he took drugs and narcotics from the kit of an Army doctor out of curiosity and a desire to see what they were. He also testified that he did not intend to return them. And in *Schultz*, a conviction for premeditated murder of a Vietnamese civilian, the accused, in open court, admitted the slaying and gave as his reason " 'I had to kill a VC.' 'I couldn't sleep at night, I had to help these guys that were dead, I had to do something for them, knowing that their lives weren't wasted.' " United States v Schultz, supra, at page 139.

The situation before us is more in accord with United States v Mathis, 15 USCMA 130, 35 CMR 102 (1964), and 17 USCMA 205, 38 CMR 3 (1967). Mathis was convicted of premeditated murder. The homicide was admitted by the accused both in a pretrial statement and in open court. According to the testimony of Mathis, he and the victim engaged in a consensual, oral homosexual act. When the victim, thereafter, attempted to penetrate the accused anally, the latter fought with the victim and ultimately killed him. The central issue in the trial was the sanity of the accused. The law officer rejected a defense request for an instruction on the effect of evidence of good character on the ground that the accused had admitted committing the act and the only question was his mental responsibility. We said in *Mathis*, 17 USCMA, at page 208:

"The error in the law officer's rationale, clearly revealed by this colloquy, is that not every homicide amounts to a crime and it is only the former which is admitted by the defense. That a crime of any degree was committed is a conclusion they totally reject.

"The instructional omission, then, is not only error but is necessarily prejudicial for good character alone is sufficient to provide a reasonable doubt as to guilt (United States v Sweeney, 14 USCMA 599, 34 CMR 379 [1964], and cases cited therein), and, under the circumstances of this case, should have been given. United States v Cooper, 15 USCMA 322, 35 CMR 294 [1965]; United States v Harrell, 9 USCMA 279, 26 CMR 59 [1958]; United States v Sitren, 16 USCMA 321, 36 CMR 477 [1966]; United States v Flippen, 16 USCMA 622, 37 CMR 242 [1967]."

In the case at bar, the accused's mental responsibility was lengthily contested. However, unlike *Dodge, Schultz,* or even *Mathis,* there was no judicial admission of guilt as the accused did not testify. The question of whether the alleged offense was committed[1] was one of fact for the court members to decide based on the evidence, which included the testimony of the victim and the pretrial statement of the accused, the admissibility of which was contested at trial.

In his statement, the accused related a different version of the events than

---

[1] The accused was charged with taking immoral, improper, and indecent liberties with a female under sixteen years of age (eight), by willfully and wrongfully exposing his penis to her, by asking her to place his penis in his pants, and by permitting her to touch his penis, with intent to gratify his sexual desires.

did the victim and contended that the exposure was inadvertent and that he had no intent whatever to gratify his sexual desires. The evidence of good character of the accused related directly to his work with women and children at the Youth Activities Center on post, where the charged offense allegedly occurred. Obviously relying on the law officer's agreement that he would give the requested instruction, defense counsel made extensive use of his character evidence on findings.

As I have noted above, my brothers take the position that the accused admitted the commission of the charged offense and, hence, they hold that no prejudice resulted from the law officer's failure to instruct on the effect of evidence of good character. As support for their position, that the commission of the offense was admitted, they quote at length excerpts from the closing argument of defense counsel as well as portions of the testimony of witnesses offered on the issue of the accused's mental responsibility. Taken out of context as they are, these quotations present a disturbing picture of the accused. They depict a man who committed numerous bizarre and dangerous actions on frequent occasions when he had been drinking. The defense argued that his conduct was the product of a psychomotor epileptic seizure induced by compulsive and chronic alcoholism. Counsel acknowledged his inability to produce *substantial* evidence of good character "because of the peculiar nature and background and mental condition of my client." He did, however, introduce evidence of good character of the accused from individuals who had occasion to observe the accused when he had not been drinking. From this he concluded, "So, maybe, we have a Dr. Jekyll, right here (indicating—left hand); but does the other testimony (pause)—show the Mr. Hyde?"

None of the evidence of bizarre behavior, however, even remotely related to a propensity for sexual activities with little girls, while the evidence of good character concerned his work with women and children at the Youth Ac-

tivities Center on post, where the charged offense allegedly occurred. But in any event, the question for the Court to decide, as posed by trial counsel in his argument to the court, was "whether or not he really had the intention to gratify his sexual desire." This element was never admitted and it was the defense contention that the accused was unable to form such an intent because of his mental disability.

I am also impelled to disagree with my brothers' assessment of the status of the evidence by the fact that the testimony relative to other evidence of misconduct was not admitted or presented for the purpose of determining the guilt or innocence of the accused of the charged offense but solely on the issue of the accused's mental responsibility. The law officer properly instructed the court that it could not consider this evidence on the question of guilt or innocence. United States v Bryant, 12 USCMA 111, 30 CMR 111 (1961); United States v Baskin, 17 USCMA 315, 38 CMR 113 (1967), and cases cited at page 318. Its consideration at this level must also be so limited and may not be used to sustain a finding by this Court that the commission of the charged offense was admitted. In my opinion, reliance by the majority on United States v Dodge and United States v Schultz, both supra, where the offense was *judicially* admitted, is misplaced.

Character evidence in a sex-related case "is often the best, if not the only, defense which the accused can produce." United States v Phillips, 3 USCMA 137, 142, 11 CMR 137 (1953). Cf. United States v Blackwell, 12 USCMA 20, 30 CMR 20 (1960). And, as noted above, evidence of good character alone may be sufficient to warrant acquittal, *even though evidence of guilt may be compelling.* United States v Browning, supra.

I would reverse the decision of the United States Army Court of Military Review, on the basis of this Court's opinions in United States v Cooper and United States v Mathis, both supra, and direct that a rehearing may be ordered.