**UNITED STATES, Appellee,**

v.

**Levern CREDIT, Sergeant, U. S. Air Force, Appellant.**

No. 32,948.
ACM 21959.

U. S. Court of Military Appeals.

Jan. 21, 1980.

For Appellant: *Captain Thomas S. Markiewicz* (argued); *Colonel B. Ellis Phillips* (on brief).

For Appellee: *Captain James R. Van Orsdol* (argued); *Lieutenant Colonel Merton F. Filkins* (on brief); *Colonel Julius C. Ullerich, Jr.*

*Opinion*

COOK, Judge:

Contrary to appellant's pleas, a general court-martial convicted him of rape, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. We originally granted review to consider two issues:

I. WHETHER THE MILITARY JUDGE ERRED PREJUDICIALLY BY DENYING THE DEFENSE REQUEST FOR SUBPOENA OR DEPOSING OF SEVERAL WITNESSES WHO WERE MATERIAL AND NECESSARY TO THE DEFENSE OF THE CASE.

II. WHETHER THE RECORD OF TRIAL WAS AUTHENTICATED BY A PERSON WHO WAS AUTHORIZED TO DO SO.

We answered the second issue in the negative but did not address the first issue, and we returned the record for proper authentication. *United States v. Credit,* 4 M.J. 118, 119 (C.M.A.1977). The record having been authenticated, we are now called upon to decide the first issue.

The victim of the offense testified that on the night of March 30, 1975, at Kadena Air Base, Japan, she was raped. An examination of her person after the incident revealed the presence of spermatozoa. The victim was unable to identify her assailant because he had thrown a coat over her head. Technical Sergeant Gulseth observed a disturbance in the area of the incident; as he approached, a man "jumped up and ran . . . and his pants fell down." He gave chase but the man got away. Gulseth returned to the girl, who appeared to be emotionally upset. Somewhat later, the appellant was found by a security policeman; he was lying in a hole near the scene of the crime. Thereafter, after appropriate advice as to, and waiver of, the right to remain silent and the right to counsel, appellant made a statement, the substance of which was stated by a government witness to be as follows:

He [the appellant] observed this young lady sitting at a table [in the NCO Club] in a different area, not immediately right where he was, and he approached this young lady for small talk. He introduced himself to her and she gave him her name, something like Malinda. At that time this young lady made a racial slur . . . —words to the effect—nigger, why don't you go back and run in the woods naked among your native friends. Sergeant Credit then left this young lady, went back over to the table where Feaster and Ibarra was and stayed for a short time, only he did not relate this information to them. Then he went into another area of the NCO Club and had a couple of drinks. At approximately 20 minutes later he left the NCO Club, walking back towards his barracks. When he was across the street from the NCO Club when he was in the vicinity of the bus stop, he noticed a lady coming out of the NCO Club who he believed to have been the same young lady who made this racial remark to him. He decided at that time he would make her walk around in the woods naked among her native friends. As this young lady approached where he was, he had his jacket and threw it over her head. He picked her up and carried her up the sidewalk into the direction of the Schilling Recreation Center. During this encounter this young lady started screaming and he threatened her. They subsequently were on the ground and it

was necessary for him to lay on top of her to hold her, and he noticed, he believed this was not the same individual who had made this remark to him in the club because she seemed heavier. She didn't seem in the same weight so he asked her what her name was and she gave him a name, but it was not the same name as the one he had gotten before, so he made the remark to her that she was not the same one, he must have a different individual or it wasn't the same person he had thought, that he had contacted in the club. He thought that he had already done something real bad and he would go to jail for it and he would be punished for it very severely so in an attempt to delay from reporting the incident he would take off her clothes so she would not go and report the incident as readily. So, therefore, he took off the bottom half of her clothing. During that time he stated that he touched her all over and that he may have placed his finger in her vagina.

At an Article 39(a) session, 10 U.S.C. § 839(a), defense counsel requested the presence of appellant's father, mother, sister, and a former commanding officer. These witnesses were expected to testify to appellant's non-violent character. Additionally, defense counsel requested a male Staff Sergeant who knew the victim; he was expected to testify to the bad character of the victim. Defense counsel's comments indicate that previous contact had been had with appellant's mother and his former commanding officer, but there had been no direct contact with the other requested witnesses. Counsel asserted, however, that appellant's father and sister would provide favorable testimony as to appellant's good character. The military judge denied the request for all the witnesses and the alternative request that the trial be postponed until they could be deposed.[1]

During court proceedings on the merits, five witnesses testified for the appellant; all stated he had a good reputation for non-violence. Additionally, the parties stipulated to testimony by appellant's mother and former commanding officer. This testimony accorded with that of the character witnesses who testified in person. In her testimony, the victim admitted she was dating the sergeant who had been requested as a defense witness; that she knew the sergeant was married; and that she had become pregnant in the course of her relationship with him, but the pregnancy had aborted.

█ Appellant now submits that the denial of his request for witnesses constitutes reversible error. I disagree. In *United States v. Tangpuz*, 5 M.J. 426 (C.M.A.1978), I set forth the standard I believe is applicable in reviewing a trial ruling denying the production of witnesses requested by the defense at government expense, as provided by Article 46, UCMJ, 10 U.S.C. § 846. That standard bears repeating:

The Court has never fashioned an inelastic rule to determine whether an accused is entitled to the personal attendance of a witness. It has, however, identified some relevant factors, such as: the issues involved in the case and the importance of the requested witness as to those issues; whether the witness is desired on the merits or the sentencing portion of the trial; whether the witness' testimony would be merely cumulative; and the availability of alternatives to the personal appearance of the witness, such as deposition, interrogatories or previous testimony. The foregoing is not meant to be exhaustive, nor can any one factor be identified as necessarily determinative of the issue. Rather, the matter must be left to the sound discretion of the person ruling on the request for the personal attendance of a witness. If adverse to the accused, the ruling is subject to review and reversal if there has been an abuse of discretion.

5 M.J. at 429 (footnote omitted).

█ As rape is a crime of violence, appellant could defend against it by

---

1. The request was submitted prior to trial, but the Article 39(a) session was apparently held prior to any action by the convening authority.

presenting evidence of his good character for peaceableness. Paragraph 138f, Manual for Courts-Martial, United States, 1969 (Revised edition). In fact, appellant presented five witnesses who testified to that effect. Appellant contends that he was entitled to the four additional witnesses because their testimony would establish his peaceableness during a period of time earlier than that covered by the five mentioned. Aside from the question of remoteness, I have no doubt that the trial judge could properly conclude that the testimony of the requested witnesses would merely have been cumulative. Moreover, the appellant admitted he had brutally and indecently assaulted the victim. His admission stood unrepudiated. In *United States v. Dodge,* 3 U.S.C.M.A. 158, 160, 11 C.M.R. 158, 160 (1953), the Court observed that when a crime that might be defended against by evidence of a particular quality of good character is admitted by the accused, "character evidence is of no effect." On this record, I perceive no " 'reasonable likelihood' that the [proffered] evidence could have affected the judgment of . . . the court members." *United States v. Hampton,* 7 M.J. 284, 285 (C.M.A. 1979).

Turning to appellant's request for the staff sergeant, defense counsel submitted that he was "expected to provide important factual information regarding the sexual behavior of the victim." Counsel did not specify the nature of the alleged behavior, but he hypothesized the victim might deny various matters. Quite clearly, counsel contemplated cross-examination questions as to her relationship with the requested witness. It turned out that the victim freely admitted her sexual relations with the sergeant. Further, other evidence of record indicates that fluids extracted from the victim after the incident were analyzed for blood type. These tests showed blood types different from that of the sergeant and, therefore, excluded him as the source of the spermatozoa found in the victim. I conclude that the sergeant had no material testimony to offer and the trial judge properly denied the defense requests that he be produced under Article 46 of the Uniform Code.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge FLETCHER concurs in the result.