UNITED STATES, Appellee

v

JOHN P. MATHIS, Sergeant, U. S. Army, Appellant

15 USCMA 130, 35 CMR 102

*Major George O. Taylor, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Captain Charles W. Schiesser.*

*Captain John C. Cortesio, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Colonel Bruce C. Babbitt* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

The appellant was convicted by general court-martial of premeditated murder under Article 118, Uniform Code of Military Justice, 10 USC § 918. His conviction and sentence to life imprisonment has been approved by intermediate appellate authorities. We granted accused's petition to consider whether:

(1) The law officer erred in his instructions on insanity.

(2) The board of review erred in denying appellant a new mental examination.

There is no factual issue involved as to the commission of the offense. The appellant admitted the killing both in a pretrial statement and in open court. He premised his defense on the grounds of insanity.

After both parties had rested, an instruction was given on insanity, partial mental responsibility and other matters not related to the issues granted. Although it is only that portion of the law officer's instruction on insanity which refers to the likelihood of immediate detection and certain apprehension, which appellant claims was prejudicially erroneous, we deem it advisable to quote his instructions on insanity which immediately preceded this phrase, in order to place it in proper context.

"Now gentlemen, there has been a lot of arguments here today, and it appears that the question of mental responsibility of the accused, a question of fact for you to decide at the time of the offense is attributed to him, has been raised by the evidence.

"In this connection, you are advised that if you have a reasonable doubt as to the mental responsibility of the accused for the offenses charged, the accused, of course, cannot be legally convicted of any offense.

"A person is not mentally responsible in a criminal sense for an offense unless he was, at the time of the offense, so far free from mental defect, disease or derangement as to be able concerning the particular act charged here, both to distinguish right from wrong and to adhere to the right.

"The phrase 'mental defect, disease, or derangement' comprehends those irrational states of mind which

131

are the result of deterioration, destruction, or malfunction of the mental, as distinguished from the moral, faculties. To constitute a lack of mental responsibility, the impairment must not only be the result of mental defect, disease, or derangement but must also substantially deprive the accused of the ability to distinguish right from wrong or to adhere to the right as to the acts here charged.

"The ability to distinguish right from wrong as to the acts here charged is a concrete, not an abstract, concept. The question is whether the accused knew that the particular acts with which he is charged was wrong in the sense that the military, or society generally, considers the acts wrong. The appraisal of the acts within the accused's own private ethical system is irrelevant to the issue in this case.

"Even though the accused may have been able to distinguish right from wrong as to the acts here charged, he is nevertheless not mentally responsible if, because of some mental defect, disease, or derangement, he was unable to adhere to the right as to the acts here charged. An inability to adhere to the right does not exist as to the acts here charged unless the accused is substantially deprived of the power of choice or volition.

"If the accused would not have committed the acts if the circumstances were such that he could have expected immediate detection and certain apprehension, he cannot be said to have acted under an inability to adhere to the right."

As indicated by the law officer, insanity is an affirmative defense and where reasonably raised by the evidence, its existence is one of fact for the exclusive determination of the court members under proper instructions. When placed in issue, the burden of proof, like every other fact necessary to establish the offense alleged, is always on the prosecution. Paragraph 122a, Manual for Courts-Martial, United States, 1951; United States v Burns, 2 USCMA 400, 9 CMR 30; Davis v United States, 160 US 469, 40 L ed 499, 16 S Ct 353 (1895). An accused's "guilt cannot in the very nature of things be regarded as proved, if the jury entertain a reasonable doubt from all the evidence whether he was legally capable of committing crime." Davis v United States, supra, at page 486.

As can be seen from the above-quoted instructions, the law officer, having determined that the issue was raised by the evidence, properly informed the court of its responsibility in this area. According to the long-held military standard for determining mental responsibility (paragraph 120b, Manual for Courts-Martial, United States, 1951; United States v Burns, supra; United States v Smith, 5 USCMA 314, 17 CMR 314; United States v Kunak, 5 USCMA 346, 17 CMR 346), he correctly divided his instructions on this issue into two distinct areas of decision: ability of an accused, with reference to the offense charged, to (1) distinguish right from wrong and (2) adhere to the right. He very clearly told the court that if it did not find "both" of these facts to exist beyond a reasonable doubt, then it could not find the accused mentally responsible for this offense.

It is elemental that before consideration can be given to one's ability to adhere to the right, an affirmative decision must first be made that the accused had the capacity to distinguish right from wrong as to the offense charged. Failure to so find must of necessity result in an acquittal. If, however, the finding is affirmative, the court then proceeds, under the military standard, to a determination of the second area, his ability to adhere to the right. It is in this area that appellate defense counsel alleges the law officer erred in his instructions, citing our decision in United States v Jensen, 14 USCMA 353, 34 CMR 133. With reference thereto, the law officer here instructed the court that:

"If the accused would not have committed the acts if the circum-

stances were such that he could have expected immediate detection and certain apprehension, he cannot be said to have acted under an inability to adhere to the right."

In *Jensen,* where the instruction was almost identically worded, we said:

". . . We hold, therefore, that the accused's ability to adhere to the right in the face of the prospect of immediate detection and apprehension is not the legally controlling consideration in determining whether he is mentally responsible. The ultimate test for mental responsibility is ability to distinguish right from wrong and to adhere to the right, and, while the hypothetical effect of immediate detection and apprehension may play a proper role in cross-examination and as a factor to be considered by the court-martial in its deliberations on the issue, it cannot be made the subject of a governing instruction or used to limit the testimony of expert witnesses. Cf. United States v Smith, 13 USCMA 471, 479, 33 CMR 3; United States v Hayden, 13 USCMA 497, 498, 33 CMR 29. As such was the categorical advice given the court here, reversal must follow." [United States v Jensen, supra, at page 358.]

See also United States v Jordan, 14 USCMA 393, 34 CMR 173; United States v Moore, 14 USCMA 418, 34 CMR 198; United States v Alphin, 15 USCMA 14, 34 CMR 460.

The Government primarily contends before this Court that, since the evidence in the case at bar did not raise an issue as to the accused's ability to adhere to the right, the defense theory being solely that accused did not know right from wrong, the instruction given could not have any controlling effect. In addition, it avers that the issue of insanity was not reasonably raised at all and therefore the law officer's instructions on this whole area were a gratuity.

We find it quite interesting to note that when this case was before the board of review on the identical issue, the Government, in a joint pleading with appellate defense counsel, agreed that the issue of mental responsibility was raised by the evidence, necessitating the use of correct instructions to guide the members of the court-martial; that the complained-of instruction constituted prejudicial error under this Court's decision in United States v Jensen, supra; and requested that the board "set aside the findings and sentence and return this case for a rehearing before a properly instructed court-martial." It was only after the board of review decided that the issue of insanity was not raised by the evidence, that the Government adopted its present position. Notwithstanding this change in view, we proceed to a determination of the subject matter of our grant.

The law officer, at trial, obviously believed that there was some evidence of insanity before the court, for he initially informed trial and defense counsel that he intended to instruct on partial mental responsibility. Thereafter, defense counsel requested that a complete instruction on mental responsibility, as distinguished from that on partial mental responsibility, be given and at the request of the law officer, he argued for his point by recalling the evidence. Trial counsel disputed defense's recollection and the law officer requested the reporter to read back portions of the testimony of the accused. Trial counsel agreed to abide by the ruling of the law officer. Subsequent to the reading, the law officer announced his intention to give both the general and the partial instruction on mental responsibility and both counsel expressed their satisfaction therewith.

A review of the testimony reflects that the accused and the victim engaged in a consensual, oral homosexual act. When the victim attempted to penetrate the accused anally, the latter physically resisted and after stating that "God ought to kill us both," he fought with the victim and ultimately killed him. During the encounter the accused had an image of the victim which "isn't a human image nor anything else that's on this earth." This event took place in Germany on August 25, 1963. Prior thereto, on July 5,

1963, the accused, at Fort Riley, Kansas, voluntarily sought psychiatric help. He was interviewed by a medical corps major on July 17th, to whom he related a previous history of homosexuality which had been bothering him for some time. According to the major's report, which was admitted into evidence, the accused "talked in terms of a 'desire to kill' which is getting stronger and he feels that he may give in to this at some time in the future. He talked in a rather grandiose and psuedo-philosophical way of being a society within himself with the right to judge others. . . . Although oriented and fairly intelligent this pt [patient] gave the impression of marked paranoid releation [sic] and aggressive impulses which are controlled with difficulty."

The major recommended evaluation by the psychiatrist and treatment before the accused went overseas. However, when the matter was discussed with the psychiatrist, the latter felt that the accused should go overseas and receive treatment if needed in the new area. The case was marked closed on July 22d with the notation, "Diagnosis—undetermined, probably pathological personality type." Thirty-four days later the event for which the accused is charged took place.

Since an accused is entitled to have presented instructions relating to any defense theory for which there is evidence in the record (United States v Amie, 7 USCMA 514, 22 CMR 304), the law officer is bound to instruct on all affirmative defenses raised therein. The necessity for determining when such an issue is raised is within the province of the law officer initially. United States v Morphis, 7 USCMA 748, 23 CMR 212; United States v Beasley, 3 USCMA 111, 11 CMR 111.

In the posture of this case, we are not disposed to hold that he erred in his determination that the issue of insanity was raised by the evidence. We are supported in our view by the fact that counsel at trial did not object (United States v Morphis, supra) and appellate Government counsel, prior to the deci-

134

sion of the board of review, conceded that the issue was raised.

We find therefore that within the rationale of our holding in United States v Jensen, supra, as quoted above, the complained-of portion of the law officer's instruction was prejudicially erroneous and reversal is required.

With reference to the second granted issue, denial by the board of review of a request for a new mental examination for the accused, we find this issue moot, requiring no further action. Subsequent to the board's action, the accused was psychiatrically examined by a board of medical officers at Fitzsimons General Hospital, Denver, Colorado. The results of this examination were appended to the brief of appellate defense counsel.

In view of our holding, the decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Army. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

The challenged instruction refers to a purely hypothetical situation entirely unrelated to the evidence in the case. Whatever its deficiency, therefore, it could not have harmed the accused. United States v Moynihan, 1 USCMA 333, 335, 3 CMR 67.

So far as the refusal of the board of review to order another psychiatric examination is concerned, the record shows that since the board of review's decision, the accused was examined by a medical board at Fitzsimons General Hospital, Denver, Colorado. The board noted that when it probed into the details of the accused's claim of delusional influence he "promptly changed his story . . . and admitted to frank prevarication." They found no evidence of mental incompetency of the kind which would legally exonerate the accused from responsibility for his act. I see no need whatever for a further psychiatric examination.

I would affirm the decision of the board of review.