UNITED STATES, Appellant and Cross-Appellee

v

DOUGLAS M. BELLAMY, Private First Class, U. S. Army, Appellee and Cross-Appellant

15 USCMA 617, 36 CMR 115

No. 18,759

January 28, 1966

*Captain John F. Webb, Jr.*, argued the cause for Appellant and Cross-Appellee, United States. With him on the brief were *Lieutenant Colonel Francis M. Cooper, Colonel Joseph J. Crimmins*, and *Captain William L. Leonard*.

*Captain Francis R. Jones* argued the cause for Appellee and Cross-Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk, Lieutenant Colonel Martin S. Drucker*, and *Captain J. Philip Johnson*.

Opinion of the Court

KILDAY, Judge:

Upon trial for premeditated murder to which the accused pleaded not guilty, he was convicted of unpremeditated murder and sentenced to dishonorable discharge, total forfeitures, confinement at hard labor for ten years, and reduction. The convening authority approved the findings and sentence but the board of review set them aside and ordered a rehearing. This action formed the basis for the following certified issue:

Was the board of review correct in holding that, on the evidence presented in this case, the accused was prejudiced by the law officer's failure to advise the court-martial specifically that, in arriving at its decision with respect to the accused's ability to distinguish right from wrong and to adhere to the right, one of the factors to be taken into consideration was the testimony of the psychiatrists that the accused would have committed the homicide even if a policeman had been standing at his elbow?

In addition, we granted accused's petition for review to consider whether the law officer erred in denying the defense request for an instruction upon the lesser included offense of voluntary manslaughter.

I

Turning initially to the certified question, we pause to observe that the slain cat of Lord Bromwell's discussion has apparently received more notoriety, as the precursor of the so-called "policeman at the elbow test" (See People v Hubert, 119 Cal 216, 51 Pac 329, 331), than Dick Whittington's legendary feline companion. Prior to our decision in United States v Jensen, 14 USCMA 353, 34 CMR 133, the concomitant question of whether an accused would have committed the act charged, had the circumstances been such that immediate detection and apprehension were certain, was being utilized, at least in military law, as a legally controlling principle in the de-

termination of the issue of irresistible impulse. In *Jensen*, however, we rejected this principle and observed that the "test" was merely a critical observation made long ago in light of the limited psychiatric knowledge then available. Therein, we stated that:

". . . while the hypothetical effect of immediate detection and apprehension may play a proper role in cross-examination and as *a* factor to be considered by the court-martial in its deliberations on the issue, it cannot be made the subject of a governing instruction. . . ." [United States v Jensen, 14 USCMA 353, 358, 34 CMR 133.] [Emphasis supplied.]

See also United States v Jordan, 14 USCMA 393, 34 CMR 173; United States v Moore, 14 USCMA 418, 34 CMR 198; United States v Alphin, 15 USCMA 14, 34 CMR 460.

In the case at bar, the central trial defense issue was lack of mental responsibility on the part of the accused; and, in that connection, two expert witnesses testified that, in their opinion, the accused would have committed the offense even if there had been a policeman at his elbow at the time. Their opinion was fully explored before the court members when both trial and defense counsel, as well as the law officer, spent considerable time examining and cross-examining one of the witnesses on this particular issue. In an out-of-court hearing on instructions, the law officer denied a defense request to include in his instructions the "policeman at the elbow test." He stated he felt it was just one facet of the issue of mental responsibility and a matter for argument but not to be instructed upon. Defense counsel preserved his point by timely objection.

The board of review agreed with appellate defense counsel's contention that the law officer erred in denying the defense request. It premised its decision on the ground that since this testimony was particularly relevant to the sole defense issue, the law

619

officer, in order to properly inform the court members of the defense theory, should have tailored his instructions to the evidence presented.

We agree that an accused is entitled to have presented instructions relating to any defense theory ■■■■■ ■ for which there is evidence in the record. United States v Amie, 7 USCMA 514, 22 CMR 304; United States v Mathis, 15 USCMA 130, 35 CMR 102. As we stated in United States v Smith, 13 USCMA 471, 474, 33 CMR 3:

> ". . . What is contemplated is the affirmative submission of the respective theories, both of the Government and of the accused on trial, to the triers of fact, with lucid guideposts, to the end that they may knowledgeably apply the law to the facts as they find them."

Here the defense theory was that the accused, at the time of the offense, lacked sufficient mental ■■■■■ ■ responsibility to be held accountable for the killing. Since there was evidence in the record to support this theory, the law officer delineated for the court the legal test for mental responsibility. The fact that he did not relate the law to any of the particular "facts" tending to prove the defense theory is unquestioned; however, he was not requested to do so. Rather, what defense was asking for was that the law officer single out one particular factor, expressed in the form of an opinion by two expert witnesses, and highlight it for the court's consideration. This was, in effect, a request that the law officer comment on the evidence. While he may do so (United States v Andis, 2 USCMA 364, 8 CMR 164; United States v Nickoson, 15 USCMA 340, 35 CMR 312), if he does his comments must be fair and adequate. Williams v United States, 93 F2d 685 (CA9th Cir)(1937). Had the law officer acceded to the defense request, without also directing the court's attention to the other evidence on this issue both *pro* and *con*, he would have thereby emphasized the evidence on one side only. This he may not do. United States v Andis, supra.

We hold, therefore, that the law officer did not err in his refusal to accede to the defense request. United States v Nickoson, supra.

II

After announcing he had no further objections to the proposed instructions, defense counsel requested that the law officer instruct the court on the lesser included offense of voluntary manslaughter. He premised his request on the grounds there was adequate provocation; there were several factors contributing to the mental state of the accused which might have caused him to act under a lingering heat of passion; and that there were questions of fact to be decided by the members of the court. The law officer denied the request, stating, "I think, under the circumstances, considering the situation of the facts as presented, voluntary manslaughter is not in issue."

Here we think the law officer erred. Voluntary manslaughter is a homicide committed in the "heat of sudden passion caused by adequate provocation." Manual for Courts-Martial, United States, 1951, paragraph 198*a*, page 353; United States v Gravitt, 5 USCMA 249, 17 CMR 249; United States v Adams, 5 USCMA 563, 18 CMR 187. Heat of passion may be ■■■■■ ■ produced by fear as well as ■■■■■ ■ rage. United States v Des-■■■■■ ■ roe, 6 USCMA 681, 21 CMR 3. When a claim of voluntary manslaughter is made, the existence and sufficiency of passion are "essentially" questions of fact to be submitted to the jury under proper instructions whenever it can be said that the alleged provocation would have any reasonable tendency to produce sudden and uncontrollable anger and heat of blood in the ordinary man. The question of such reasonable tendency is of necessity a question for the court arising upon the admission of testimony. (26 Am Jur, Homicide, § 511, pages 510 and 511; cases cited in footnotes 6 and 7.)

Whether a particular provocation has spent its force and what constitutes a reasonable time for cooling are ordinarily questions of fact for the jury; and the court cannot take it from the jury by assuming to decide it as a question of law. (26 Am Jur, *ibid.*, page 511; cases cited in footnote 10.)

Wharton says that "The determination of this question [cooling time] is for the jury." 1 Wharton, Criminal Law and Procedure, § 286, Time between provocation and homicide, page 603 (1957). See also State v Robinson, 161 Ohio St 213, 118 NE2d 517.

The precise question of whether the lower court erred in refusing to give a requested instruction on manslaughter in a trial for murder, was directly before the Supreme Court in Stevenson v United States, 162 US 313, 40 L ed 980, 16 S Ct 839 (1896). There the Court stated:

". . . The evidence as to manslaughter need not be uncontradicted or in any way conclusive upon the question; so long as there is some evidence upon the subject, the proper weight to be given it is for the jury to determine. If there were any evidence which tended to show such a state of facts as might bring the crime within the grade of manslaughter, it then became a proper question for the jury to say whether the evidence were true and whether it showed that the crime was manslaughter instead of murder. . . . The evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder and not manslaughter, or an act performed in self-defense, and yet, so long as there was some evidence relevant to the issue of manslaughter, the credibility and force of such evidence must be for the jury, and cannot be matter of law for the decision of the court."

In United States v Judkins, 14 US CMA 452, 34 CMR 232, we stated that "the ultimate determination of the existence, and degree of such fear [as to excite uncontrollable passion] is

for the triers of fact." So, too, with rage.

The question before the law officer, at the time of the defense request, was whether there was before the court some evidence of provocation which would have a reasonable tendency to produce sudden and uncontrollable anger and heat of blood in the ordinary man.

The evidence on this issue is not in dispute. The accused and the victim were engaged in a game █ of pool in their unit dayroom. At the conclusion of the game an argument ensued as to who had won and the victim demanded payment of twenty-five cents. The accused refused and as he walked away the victim threw a cue ball at the accused, but missed hitting him. The victim then ran after the accused, grabbed him by the neck, and struck him over the head with the heavy end of a cue stick. The cue stick broke into three pieces and the blow caused the accused's head to bleed. When he felt the blood, the accused, without further conversation, walked out of the dayroom to the battalion aid station where he received treatment for the wound. The homicide occurred some one and one-half to three hours later.

Clearly, this is some evidence of the provocation necessary to raise the issue of voluntary manslaughter. At this juncture, the determination of the remaining questions is for court acting under proper instructions. United States v Stevenson, supra.

Although the law officer's determination that a lesser offense is, or is not, in issue should not █ be lightly disregarded, an appellate tribunal must independently evaluate the evidence to determine whether or not an accused has been deprived of his right to have the court-martial consider all reasonable alternatives of guilt. United States v Williams, 9 USCMA 3, 25 CMR 265; United States v Morphis, 7 USCMA 748, 23 CMR 212; United States v Archibald, 5 USCMA 578, 18 CMR 202.

We hold, therefore, that the law officer erred in denying the defense request for an instruction on voluntary manslaughter.

The certified question is answered in the negative. Nevertheless, in light of our holding with regard to the assigned issue, the accused's conviction for unpremeditated murder cannot stand. Accordingly, to the extent that it sets aside that finding and the sentence, the decision of the board of review is affirmed and the case is remanded for further action in conformity with this opinion. The board of review may affirm a finding of voluntary manslaughter and an appropriate sentence, or it may return the case for a rehearing on unpremeditated murder.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

I agree with the majority's disposition of the certified question. However, I disagree with its conclusion that the law officer erred in denying the defense request to submit the lesser offense of manslaughter to the court-martial. In my opinion, the law officer correctly ruled that the evidence did not place the lesser offense in issue.

The principal opinion refers only to the relatively short interval that elapsed between the time the accused was struck with the cue stick and the time he shot the victim. It disregards the accused's conduct during that period. Among other things, the accused employed an artful lie to trick a guard at the motor pool into giving him two rounds of shotgun ammunition; he told another lie at the armory room to obtain a shotgun; he hid the gun under the mattress of his bunk; and when a barracks mate suggested to him, during a discussion of the victim's assault, that it would be better if he let the commanding officer handle the matter, he answered that he would " 'take care' " of the victim in his own way. This conduct is wholly inconsistent with the idea that the accused killed the victim while in the throes of a sudden and uncontrollable passion. I would, therefore, sustain the law officer's denial of the requested instruction on manslaughter. United States v Lee, 4 USCMA 571, 16 CMR 145.