OPINION OF THE COURT ON RECONSIDERATION
Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of unpremeditated murder and violation of a lawful general regulation, in violation of Articles 118 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 918 and 892 (1988) [hereinafter UCMJ]. He was sentenced to a dishonorable discharge, confinement for thirty years, forfeiture of all pay and allowances, and reduction to Private El. The convening authority disapproved the findings of guilty of the charge and specification concerning the violation of a regulation and dismissed that charge and its specification. The convening authority then reduced the confinement portion of the sentence to twenty-five years, but otherwise approved the sentence.
JOHNSTON, Judge:
Before this court the appellant asserted, inter alia, that the evidence properly introduced at trial was factually and legally insufficient to support the unpremeditated murder charge. We agreed, and on 28 April 1995 affirmed a conviction for voluntary manslaughter. The government subsequently filed a motion for reconsideration and a suggestion for en banc reconsideration, contending that the court misconstrued the facts and misapplied the law. We subsequently vacated that opinion when we granted the request for reconsideration and the court denied the en banc suggestion. United States v. Saulsberry, ARMY 9301646 (Army Ct.Crim.App. 31 May 1995) (order) (unpub.). Having considered those issues raised by the government, we agree that the appellant’s conviction was legally sufficient, but still find the evidence factually sufficient to support only a conviction for voluntary manslaughter.
Facts
The appellant was described as a soldier • who just did not “fit in” with people in his *648 unit at Fort Story, Virginia. He was berated on a daily basis by other soldiers in the unit and called a variety of vulgar and insulting names. He was teased about who he was dating and criticized for his haircut, the way he wore his coat, and his choice of shoes. Several days before the incident that gave rise to the charges in this case, he was forced to walk though a gauntlet of other soldiers who berated and taunted him as he left his room.
The two proceeded to curse each other vigorously. Specialist Speed warned the appellant, ‘You don’t want to f— with me. You’re too young, I’ll teach you a lesson. Your young butt doesn’t want to f— with me.” The appellant took a step backwards and shoved SPC Speed in the chest with both hands. After the two soldiers glared at each other for a few seconds, the appellant turned to walk back to his corner of the room. Specialist Speed charged at the appellant when his back was turned and threw him onto a nearby bed. While the appellant’s head was hanging off the side of the bed, Specialist Speed sat on his chest and put his hands on the appellant’s throat. He then raised his hands, indicating to the other soldiers in the room that he could defeat the appellant any time they fought.
The appellant shared a barracks room with three other soldiers. At about 1200 on 4 April 1993, the appellant was sitting in his room with his roommates watching television. The victim, Specialist (SPC) Speed, entered the room, opened the small refrigerator and helped himself without asking. One of the other soldiers cursed SPC Speed and told him to stay out of the refrigerator. He replied, “I know whose s— I drank, and I know who it belonged to, and I don’t give a s— about [the appellant].” Then SPC Speed, in total disregard for the appellant’s desires, picked up the television remote control and began changing channels. The appellant angrily told the victim to “not to come in the room and just start bothering things” that did not belong to him. The appellant also complained, “F— you, I’m tired of your s — .” The appellant then stood up, pushed his chair back, went around the chair, and “stepped up” in SPC Speed’s face.
One of the other soldiers pulled SPC Speed off the appellant, who retreated to his corner of the room, saying approximately ten times that SPC Speed “wasn’t s — ” and “you only got me was because my back was turned.” Specialist Speed, who appeared unruffled by the episode, ignored the diatribe and started talking with one of the other soldiers in the room. As he sat on his bed muttering, the appellant played with a boot knife by pulling it in and out of the sheath.
After several minutes of listening to the complaining, SPC Speed turned and said to the appellant, “Well, quit crying, you’re looking now, and whoever said fighting is fair, mother f- — .” He continued, ‘Your back is not turned now, and what do you want to do?” Specialist Speed walked toward the appellant, put his hands partially into the waistband of his trunks, and leaned forward at the waist to within a foot and one-half of the appellant.
The appellant stood up with the knife in one hand and the scabbard in the other. Specialist Speed continued cursing the appellant, and stood taunting him weaving his head back and forth. The appellant suddenly jabbed with the knife one time at SPC Speed. One of the other soldiers in the room yelled at the appellant to put down the knife, and asked SPC Speed, “Did he poke you with it?” Specialist Speed, who never said anything, placed his hands over his chest, took several steps backwards, and fell to the floor. The appellant stood over him and said seven or eight times, “I told him to stop f------with me.” Specialist Speed later died from a single stab wound that penetrated between two ribs and pierced his heart.
Discussion of the Offense
The appellant was convicted of unpremeditated murder in violation of Article 118(2), UCMJ, when the members determined that he unlawfully killed SPC Speed with the intent to kill or inflict great bodily harm. The Manual for Courts-Martial, United States, 1984, Part IV, para. 43b(2) [hereinafter MCM, 1984] lists four elements for the offense:
(a) That a certain named or described person is dead;
*649 (b) That the death resulted from the act or omission of the accused;
(c) That the killing was unlawful; and
(d) That, at the time of the killing, the accused had the intent to kill or inflict great bodily harm upon a person.
While there is no dispute as to the first three elements of the offense in this case, the final element is the focus of the appellant’s claim that he was convicted of the wrong offense. He contends that the facts are sufficient only to support a conviction for manslaughter in violation of Article 119, UCMJ.
We note that the elements for voluntary manslaughter are identical with those of unpremeditated murder. The offenses are distinguishable because voluntary manslaughter “requires that the offense be committed in the heat of sudden passion caused by adequate provocation and the result of fear or rage, whereas unpremeditated murder does not.” United States v. Valdez, 35 M.J. 555, 560 n. 8 (A.C.M.R.1992), aff'd, 40 M.J. 491 (C.M.A.1994), (citing United States v. Varraso, 21 M.J. 129 (C.M.A.1985), cert, denied, 475 U.S. 1124,106 S.Ct. 1645, 90 L.Ed.2d 190 (1986). As the Manual explains,
An unlawful killing, although done with an intent to kill or inflict great bodily harm, is not murder but voluntary manslaughter if committed in the heat of sudden passion caused by adequate provocation. Heat of passion may result from fear or rage. A person may be provoked to such an extent that in the heat of sudden passion caused by the provocation, although not in necessary defense of life or to prevent bodily harm, a fatal blow may be struck before self-control has returned. Although adequate provocation does not excuse the homicide, it does preclude conviction of murder.
MCM, 1984, para. 44c(l)(a), emphasis added.
The evidence in this case clearly reveals that SPC Speed was provoking the appellant and that the appellant was afraid and angry. The question, then, is whether the fear and/or provocation was sufficient to preclude conviction of murder. The Manual and case law indicate that the provocation must be adequate to excite uncontrollable passion in a reasonable person. “Adequate provocation is an objective concept.” United States v. Seeloff, 15 M.J. 978, 984 (A.C.M.R.1983).
It has long been recognized in military law that “insulting, abusive, teasing, or taunting remarks, standing alone, do not constitute an adequate provocation to reduce murder to voluntary manslaughter.” United States v. Stark, 19 M.J. 519, 523 (A.C.M.R.1984), aff'd, 24 M.J. 381 (C.M.A.1987), cert, denied, 484 U.S. 1026, 108 S.Ct. 750, 98 L.Ed.2d 763 (1988)(emphasis added). The Manual also specifies that “[ijnsulting or abusive words or gestures, a slight blow with the hand or fist, and trespass or other injury to property are not, standing alone, adequate provocation.” MCM, 1984, para. 44c(1)(b) (emphasis added).
During oral argument, appellate government counsel contended that the only provocation present in this case was the cursing and name-calling by SPC Speed. Thus, the government contends that the provocation, if any, was insufficient to excite uncontrollable passion in a reasonable person. We view the facts somewhat differently, however, and find that SPC Speed’s course of conduct toward the appellant was adequate provocation to preclude a conviction for murder.
We find that the appellant reacted to much more than mere abusive words. We note that the appellant was peaceably watching television in his own room in the barracks when SPC Speed entered without invitation, opened the appellant’s refrigerator, and consumed one of his drinks. We find this conduct by the victim to be intrusive and provocative. Furthermore, the conduct was accompanied by loud and abusive remarks about the appellant. When these events led to a confrontation and shoving match that the appellant broke off, SPC Speed attacked the appellant from the rear, threw him on a bed, began to choke him, and then subdued and humiliated him in front of fellow soldiers.
The appellant then retreated to his corner of the room where he sat on his bed. He was again confronted by the swaggering and foul-mouthed SPC Speed who taunted him by calling him “all sorts of names.” Specialist Speed asked, “What are you going to do mother-----” and “f-- you, what are you *650 gonna do, chicken s — ?” He also challenged the appellant, “Do you want me to teach you a lesson.” All of these epithets were delivered by SPC Speed while he stood adjacent to the appellant’s bed and while he leaned over in the appellant’s face in a menacing manner. We find that the appellant reacted and lashed out with his knife in the heat of sudden passion resulting from rage and fear when confronted with all of these provocative actions and statements. We further find that these provocations were adequate to provoke uncontrollable rage, fear, and passion in a reasonable person. Thus, the conviction for unpremeditated murder cannot stand.
The remaining assertions of error, to include those raised personally by the appellant pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), are without merit.
We affirm only so much of the findings of guilty of the Charge and its Specification as finds that the appellant did, unlawfully kill SPC Michael L. Speed in the heat of sudden passion, in violation of Article 119, UCMJ. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.
Senior Judge GRAVELLE concurs.