UNITED STATES, Appellee,

v.

**Private First Class Martez L. HENDERSON, United States Army, Appellant.**

**ARMY 9501435.**

U.S. Army Court of Criminal Appeals.

April 30, 1998.

For Appellant: Major Michael E. Hatch, JA (argued) (on brief); Captain Norman R. Zamboni, JA; Major Holly S.G. Coffey, JA (argued); Colonel John T. Phelps II, JA (on Reconsideration).

For Appellee: Captain Thomas N. Auble, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Virginia G. Beakes, JA (on original brief); Lieutenant Colonel Eva M. Novak, JA; Major Virginia G. Beakes, JA (on supplemental brief); Captain Chris A. Wendelbo, JA (argued); Colonel Joseph E. Ross, JA; Lieutenant Colonel Frederic L. Borch III, JA (on Reconsideration).

Before EDWARDS, KAPLAN, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

Per Curiam:

A general court-martial panel composed of officer and enlisted members found appellant guilty, contrary to his pleas, of the premeditated murder of Thomas Kreiz, a German national; the aggravated assault of the same Mr. Kreiz prior to his death by kicking him in the head with a shod foot, a means likely to produce grievous bodily harm; and the aggravated assault of Mario Massaro, also a German national, by stabbing Mr. Massaro with a knife and thereby intentionally inflict-

ing grievous bodily harm.[1] These offenses constituted violations of Articles 118(1) and 128, UCMJ, 10 U.S.C. §§ 918(1) and 928 (1988). The members sentenced the appellant to be reprimanded, to be reduced to the grade of Private E1, to forfeit $300.00 pay per month for fourteen months, to be confined for the length of his natural life, and to be dishonorably discharged from the service. Acting on the advice of his staff judge advocate, the convening authority changed the finding of guilty as to the murder charge (Charge I and its Specification) from premeditated to unpremeditated murder (Article 118(2), UCMJ), approved the remaining findings of guilty, and approved only so much of the adjudged sentence as provided for a dishonorable discharge, confinement for sixty years, forfeiture of $300.00 pay per month for fourteen months, and reduction to Private E1.

We initially reviewed this case pursuant to Article 66, UCMJ, and issued an opinion on 18 November 1997. There, a majority of this court reduced the appellant's homicide conviction from unpremeditated murder to voluntary manslaughter and authorized a rehearing on the sentence. Upon the government's filing of a Petition for Reconsideration and Suggestion for Consideration *En Banc* on 20 January 1998, we vacated our original opinion. *United States v. Henderson,* ARMY 9501435 (Army Ct.Crim. App. 19 February 1998) (order)(unpub.). We also granted the government's request for reconsideration. The Suggestion for Consideration *En Banc* was not adopted by the Court as a whole. Having reconsidered our opinion, we now clarify the facts below in Part I, and a majority of this court now affirms the findings of guilty and the sentence as approved by the convening authority.

We have, again, considered the record of trial, the single assignment of error, the government's reply thereto, the three issues personally raised by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), all supplemental briefs and citations of authority filed by counsel, and the two oral arguments presented by counsel.[2] We have determined that appellant's three *Grostefon* assertions are totally lacking in merit and, therefore, we reject them. Although we reject it also, we feel that it is appropriate to comment on appellant's assignment of error challenging the admissibility of pretrial statements he made to U.S. Army Criminal Investigation Command (CID) agents in which he admitted stabbing the decedent, Mr. Kreiz, but claimed that he did so in self-defense.

## I. FACTS [3]

The death of Mr. Kreiz and the wounding of Mr. Massaro resulted from a dispute over a taxicab that occurred at the bahnhof (train station) in Bad Kreuznach, Germany, Fasching[4] night, 23 February 1995. Several hours before midnight on that date, after an afternoon and evening of dining and drinking, Mr. Kreiz and his party of five, composed of himself, his mother, two additional female

---

1. The appellant was originally charged with the attempted murder of Mr. Massaro, in violation of Article 80, Uniform Code of Military Justice [hereinafter UCMJ]. The members returned a finding of not guilty of attempted murder, but guilty of the lesser included offense of aggravated assault in violation of Article 128, UCMJ.

2. On 15 April 1997, this court on its own motion, ordered oral argument on the following issues:

I
WHETHER THE APPELLANT EVER INVOKED HIS RIGHT TO COUNSEL AND, IF SO, WHEN?

II
IF THE ANSWER TO ISSUE I IS IN THE AFFIRMATIVE, WHETHER THE APPELLANT THEREAFTER WAIVED HIS RIGHT TO COUNSEL?

III

WHETHER THE ADMISSIONS OF THE APPELLANT WERE VOLUNTARY AND, THEREFORE, ADMISSIBLE IN HIS COURT–MARTIAL?

This court heard oral argument on 4 June 1997 and, on reconsideration, on 11 March 1998.

3. The testimony introduced at trial, particularly that of the government's seventeen witnesses, is not uniform on several determinative facts. Thus, we have been required to exercise our Article 66(c), UCMJ, fact-finding powers extensively in resolving this appeal.

4. We note that Fasching is the German equivalent of Mardi Gras, a celebration of personal indulgence before the commencement of the observance of the Christian period of self-denial known as Lent.

friends, Ms. Iris Porth and Ms. Annabelle Kurz, and Mr. Massaro, apparently decided not to wait their turn in line at the bahnhof taxicab stand and entered the next taxi that arrived. Appellant, who is black[5], and his party of three, composed of himself, another black soldier named Coleman, and a caucasian German national named Krakowiki, were among several persons who took issue with Mr. Kreiz's going to the head of the line.

Krakowiki verbally protested and physically held the front passenger door of the taxi, preventing Mr. Kreiz from closing it. When Krakowiki assaulted Mr. Kreiz by kicking him once on the thigh, Mr. Kreiz exited the cab and swung his fist at Krakowiki. Krakowiki was not hit, but backed away and ultimately ran towards, and into, Schaefergasse alley.[6] Mr. Kreiz gave chase. His mother and Mr. Massaro yelled at him to "Stop. Leave him alone. Let's go home. It's late." Appellant, Coleman, Mr. Massaro, and Ms. Porth all followed behind at various intervals and in some undetermined order.

However, by the time Mr. Massaro and Ms. Porth arrived at the scene, they saw Mr. Kreiz down on the ground with only appellant standing in very close proximity to him. It was obvious that Mr. Kreiz had been injured. Mr. Massaro got in between appellant and Mr. Kreiz. Unbeknownst to both Ms. Porth and Mr. Massaro, appellant had stabbed/cut Mr. Kreiz eight times, five of which were penetrating wounds.[7] Mr. Massaro and Ms. Porth lifted Mr. Kreiz to his feet, and while supporting him between them, assisted him out of the alley and back to the bahnhof. As they were doing so, they were followed by men who were taunting them. It was at this time that Mr. Massaro was struck in the lower right portion of his back. Although he did not realize at the time that he had been stabbed, this became apparent shortly thereafter. When he was struck, he turned and saw appellant standing about three to six feet behind him, but he never saw a knife. After Mr. Kreiz was dragged/carried back to the front of the bahnhof by his two friends, he collapsed on the ground. While lying on the ground mortally wounded, he was kicked in the head and side by two individuals identified by witnesses as various combinations of appellant, Krakowiki, and Coleman.

Witnesses to the violent altercation notified the German police at the bahnhof. When the police responded, appellant and his companions fled the scene with the police in pursuit. After a lengthy foot chase, appellant was cornered and apprehended. He was taken into German police custody and transported back to the bahnhof where he was identified by the decedent's mother and Ms. Porth as one of Mr. Kreiz's assailants. He was then taken to the Bad Kreuznach main police station where he was detained for questioning.

After being advised of his rights against self-incrimination under both German law and Article 31, UCMJ,[8] appellant waived those rights and, beginning at about 12:30 a.m. on the morning of 24 February 1995, was interrogated for approximately one and one-half hours by German police. Appellant steadfastly denied any involvement in the incident leading up to the death of Mr. Kreiz. At about 2:00 a.m., appellant indicated that he was tired and asked to continue the interview the next morning. The German police immediately complied with appellant's request and ceased all questioning. The occur-

5. The race of appellant and the members of his party is relevant only because a number of the eyewitnesses to the melee identified the participants as the "taller black" or "shorter black" or by reference to Mr. Krakowiki's unique braided hair style and the fact that he was wearing a red bandanna. A stipulation of fact established that appellant was three inches shorter than his black associate, Coleman.

6. The dispute at the taxi stand between Mr. Kreiz and Krakowiki was substantial enough to cause an unidentified German man to immediately report it to the police located at the bahnhof.

However, when the police arrived at the taxi stand, all was calm there because the action by then had moved several hundred meters away into the Schaefergasse alley.

7. Of these five, one stab to the chest was fatal.

8. Appellant was advised of his Article 31, UCMJ, rights by Mr. Ernesto Panaligan, the U.S. Army CID special agent (SA) who was on duty that night. Special Agent Panaligan remained as an observer to the German authorities' interrogation.

rences that are the basis for appellant's sole assignment of error commenced at this time.

Special Agent Ernesto Panaligan, who was present as an observer, asked the head German investigator if he could talk to appellant in private and was permitted to do so. Special Agent Panaligan told appellant that "if he had nothing to do with the murder, he had nothing to worry about" and "that he should just tell the truth." Special Agent Panaligan also stated that he "was a representative of the U.S. Government and was present to help the appellant." Appellant did not respond immediately, but as SA Panaligan was about to leave the room, appellant waved him back into the room and asked about punishments if he were convicted. Special Agent Panaligan answered that punishment was up to the courts. Appellant then admitted that what he had told the German investigators was "not really what happened" and that he "wanted to tell the truth now."

Special Agent Panaligan left the room and returned with his supervisor, CID SA John Kampa. Upon entering the room, SA Kampa said to appellant, "I understand you have something to say." Appellant replied that he did, but that "he needed a lawyer." Recognizing that appellant had invoked his right to counsel, SA Kampa indicated that he could not talk to appellant if the appellant wanted to talk to a lawyer first and started to leave the room. Appellant motioned him back and asked if he could make a statement at that time and talk to a lawyer "in the morning." Special Agent Kampa initially responded that that could not be done, but when appellant stated, "What? I can't have both?", SA Kampa inquired, "Do you want to talk now and you want a lawyer in the morning?" Appellant responded affirmatively.

Thereafter, in the presence of German police and CID agents, the appellant admitted to stabbing Mr. Kreiz three or four times, purportedly in self-defense, as Mr. Kreiz was beating the appellant.[9] Appellant described his fear of great bodily injury and asserted that he "jabbed" Mr. Kreiz with his pocketknife in the side and back to get Mr. Kreiz to stop pummeling him.[10] This admission by appellant, that he had stabbed the decedent in the midst of an affray, was the only direct evidence linking appellant to the stabbing death of Mr. Kreiz. There was circumstantial evidence in the form of the victim's blood on the front of appellant's clothing, however, no witness saw appellant stab Mr. Kreiz, no knife was ever recovered, and the victim's blood was also found on Krakowiki's clothing.

## II. VOLUNTARINESS OF THE ADMISSION

The law is clear as to the admissibility of appellant's statement that he stabbed the decedent, assertedly in self-defense. Involuntary pretrial confessions are inadmissible in trials by court-martial. *United ed States v. Lonetree,* 35 M.J. 396 (C.M.A. 1992), *cert. denied,* 507 U.S. 1017, 113 S.Ct. 1813, 123 L.Ed.2d 444 (1993); Article 31(d), UCMJ; MANUAL FOR COURTS-MARTIAL, UNITED STATES, Mil.R.Evid. 304 (1995). Appellant, who clearly was in police custody, was properly advised of his constitutional and statutory rights against self-incrimination and, at least initially, waived those rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Article 31(b), UCMJ. When appellant subsequently invoked his right to counsel, questioning ceased until he reinitiated communication, first with SA Panaligan, and subsequently with SA Kampa. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378

9. Appellant's admission that he stabbed Mr. Kreiz was substantially the only essential aspect of his statement that was not contradicted by other evidence introduced at trial. For example, *see* footnote 10.

10. Appellant also stated that he defended himself when Mr. Kreiz knocked him to the ground and struck him repeatedly in the face. According to appellant, when he was able to pull down Mr. Kreiz and roll over on top of him, Mr. Massaro joined in the melee, kicking appellant in the stomach and hitting him in the face. Appellant finally pulled out his pocketknife to defend himself against both Mr. Kreiz and Mr. Massaro. We have found that Mr. Massaro's only role in Schaefergasse alley was to separate appellant from Mr. Kreiz after Mr. Kreiz had been injured by appellant. Consequently, we find the appellant's statement to law enforcement authorities concerning the circumstances surrounding the stabbing to be incredible.

(1981). Appellant declared his desire to give a statement to the CID agents "now" and to consult with counsel "in the morning." This constituted at the very most an ambiguous reinvocation of his right against self-incrimination. *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). *See also, Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987)(police did not violate defendant's rights in continuing to interrogate him when he agreed to extended oral discussion but expressed an unwillingness to give a written statement until his attorney was present). Nothing in the facts of this case supports the conclusion that appellant's will was overborne; his ultimate decision to make a statement claiming self-defense was "an essentially free and unconstrained choice...." *United States v. Bubonics,* 45 M.J. 93, 95 (1996). Accordingly, concluding as a matter of law, as we do, that the military judge correctly determined that appellant's statement was voluntary and admissible, we reject appellant's sole assignment of error.

## III. SUFFICIENCY OF THE EVIDENCE

■ Article 66(c), UCMJ, imposes upon this court the duty to determine both the legal and factual sufficiency of each finding of guilty. The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). In fulfilling this duty, we find it appropriate to discuss the finding as to the homicide of Thomas Kreiz (Charge I). Appellant was charged with, and convicted by the court-martial panel of, premeditated murder (Article 118(1), UCMJ). The convening authority disapproved the guilty finding of premeditated murder and substituted a guilty finding of unpremeditated murder (Article 118(2),

UCMJ). He did so upon the advice of his staff judge advocate who opined in the addendum to his Rule for Courts–Martial 1106 [hereinafter R.C.M.] recommendation that such action should be accomplished as a matter of clemency.[11] In resolving legal sufficiency, this court is bound to "draw every reasonable inference from the evidence of record in favor of the prosecution,"[12] that the evidence establishes beyond a reasonable doubt that: (1) Thomas Kreiz is dead, (2) his death resulted from appellant's act of stabbing him with a knife, (3) the killing was unlawful, and (4) appellant, at the time of the killing, had the intent to kill or inflict great bodily harm. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, para. 43b(2) [hereinafter MCM]. The evidence meets this standard. For factual sufficiency, the test is whether, after weighing the evidence of trial and making allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. UCMJ, art 66(c); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987). We have no difficulty concluding that the evidence establishes each of the elements of proof beyond a reasonable doubt. We find that the evidence of record supports the conclusion of the members that the appellant is not entitled to the defense of self-defense. *See* R.C.M. 916(e)(1). Nor was the appellant provoked to such an extent that, in the heat of sudden passion caused by adequate provocation, a fatal blow was struck before self-control could return. *See* MCM, Part IV, para. 44c(1)(a). We also find that any provocation offered by Mr. Kreiz himself was insufficient to excite uncontrollable passion in a reasonable person.

## IV. DECISION

Accordingly, the findings of guilty and the sentence are affirmed.

---

**11.** It appears that the staff judge advocate's recommendation for clemency was in response to appellant's testimony as a government witness in the trial of his co-accused, Private Coleman.

**12.** *United States v. McGinty,* 38 M.J. 131, 132 (C.M.A.1993).

KAPLAN, Judge, concurring in part and dissenting in part:

I am in partial agreement with my fellow judges' recitation of the facts in Part I of the lead opinion, and I concur in their resolution of the issue in Part II concerning the admissibility of appellant's confession that he stabbed the decedent, albeit in claimed self-defense. I must, however, respectfully dissent from their legal conclusion in Part III that the evidence of record is legally and factually sufficient to warrant affirming the guilty finding of unpremeditated murder. I am convinced that a mitigating factor, action in the heat of sudden passion caused by adequate provocation, existed in this case and that its legal effect is to require us to affirm a guilty finding of voluntary manslaughter rather than unpremeditated murder.

The only direct evidence of appellant's involvement in the death of Mr. Kreiz is that contained in his admission to law enforcement authorities that he stabbed the decedent while both were involved in a violent confrontation, with the decedent beating him about the head and face, and that his sole purpose was to deter the decedent from assaulting him further. The forensic evidence in the case, that is, the location of the wounds on the decedent's left side and back and the presence of significant amounts of the decedent's blood on the right front portion of appellant's clothing, is entirely consistent with appellant's version of the encounter asserting that the decedent was beating appellant at the time that appellant stabbed him.

This court had occasion to address the legal distinction between the offenses of murder and manslaughter in *United States v. Calley*, 46 C.M.R. 1131, 1973 WL 14570 (A.C.M.R.1973), *aff'd*, 48 C.M.R. 19, 1973 WL 14894 (C.M.A.1973). In that case, this court held that, "Malice is still the proper term for describing that state of mind which distinguishes murder from manslaughter." *Id.* at 1175. The court went on to explain that,

[M]urder is the starting point for evaluating the degree of criminality of an intended killing done without justification or excuse. The degree may be reduced to manslaughter given certain circum-

stances.... Fundamentally, unmitigated intent to kill *is* the malice. This is why ... reduction of intended killing from murder to voluntary manslaughter must be based on objectively adequate provocation.... Only after some evidence of adequate provocation is presented is the Government faced with bearing the burden of proof that the more serious offense of murder was committed.

....

To be legally adequate, the provocation must be of a quality which would 'excite uncontrollable passion in the mind of a reasonable man.'

*Id.* at 1176 (citing para. 198, MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1969). (Emphasis in text). These declarations of the black-letter law of homicide, although more than two decades old, remain the controlling precedent on this issue. *See also* MCM, Part IV, para. 44c(1). Whether an unlawful killing constitutes murder or a lesser offense depends upon the circumstances. *Id.* para. 43c(1).

As stated above, the only specific evidence of record concerning the fatal stabbing of Mr. Kreiz is that contained in appellant's admissions to German and American law enforcement authorities. In his statement, appellant maintained that he stabbed the decedent while he and appellant were engaged in a violent physical altercation in which Mr. Kreiz had the upper hand. He further described his fear of great bodily harm. "Heat of passion may be produced by fear as well as rage." *United States v. Bellamy*, 36 C.M.R. 115, 118, 1966 WL 4428 (C.M.A.1966)(citing *United States v. Desroe*, 21 C.M.R. 3, 1956 WL 4544 (C.M.A.1956)); MCM, Part IV, para. 44c(1)(a). Whether appellant's arguably self-serving statement is accepted as true or not, it did constitute "some evidence of adequate provocation" on the part of Mr. Kreiz. Some evidence having thus been presented, the burden then fell upon the Government to disprove the existence of the mitigating factor (action in the heat of sudden passion). *Calley*, 46 C.M.R. at 1175. Government counsel offered no evidence in rebuttal to the appellant's claims. For example, there was no evidence intro-

duced (1) that appellant suffered little or no injury to his facial or head area, or (2) that appellant threatened to kill or injure Mr. Kreiz before striking him, or (3) if Mr. Kreiz did provoke the physical confrontation with appellant, that the provocation was insufficient to excite uncontrollable sudden passion in a reasonable person. Under the set of facts presented in this case, I would find that although the appellant is not entitled to complete exoneration based on his claim of self-defense because he utilized excessive force (a knife) in resisting the force being applied to his body (with fists), *see United States v. Martinez*, 40 M.J. 426 (C.M.A.1994), he was acting in the heat of sudden passion caused by adequate provocation.

I reach the conclusion that the mitigating factor existed based on the following facts established by the evidence of record: (1) Mr. Kreiz, the decedent, was aggressive at the taxi stand and continued to be aggressive as evidenced by his chasing Krakowiki and appellant when they attempted to retreat. (2) Mr. Kreiz's actions were substantially provoking, amounting to more than mere insulting language or a push with the flat of the hand; rather, he ran several hundred yards in pursuit of his perceived adversaries, and he did so over the protestations of his mother and his friends. (3) The rapid sequence of events provided no cooling off period between Mr. Kreiz's provocation and appellant's reaction thereto. (4) As stipulated by the government, Mr. Kreiz was physically much larger than appellant—appellant was five feet five inches tall and weighed 117 pounds whereas the decedent was five feet ten inches tall and weighed 154 pounds. (5) As evidenced by the autopsy chemical tests, Mr. Kreiz was significantly intoxicated by alcohol and, perhaps, hashish. (6) Mr. Kreiz had previously been arrested for the crime of assault. (7) The testimony of several witnesses that appellant possessed the character trait of peacefulness. (8) The fact that appellant stabbed Mr. Massaro while Massaro was assisting Mr. Kreiz out of the alley and kicked the decedent later while Mr. Kreiz was lying mortally wounded on the ground in front of the bahnhof, at both of which times appellant was no longer in any danger of physical harm, further indicates appellant's lack of ability to think rationally and to coolly reflect on his actions. Facts (1), (2), (4), (5), (6), and (7) go directly to the issue of adequate provocation. Facts (3), (4), (7) and (8) serve to establish actions based on uncontrollable sudden passion.

Although action in the heat of sudden passion caused by adequate provocation does not excuse a homicide, it does preclude conviction of murder. MCM, Part IV, para. 44c(1)(a). As a matter of law, a homicide committed in the heat of sudden passion is manslaughter, not murder. *See United States v. Saulsberry*, 43 M.J. 649 (Army Ct. Crim.App.1995). It is important to keep in mind that the elements of voluntary manslaughter under Article 119(a), UCMJ, are identical to the elements of unpremeditated murder under Article 118(2), UCMJ, the only distinction being the existence, *vel non*, of the mitigating factor of action in the heat of sudden passion. Compare MCM, paras. 43b(2) and 44b(1). "Sudden passion means a degree of rage, pain, or fear which prevents cool reflection." Dep't of Army, Pam. 27–9, MILITARY JUDGES' BENCHBOOK, para. 3–43–1d (30 Sep. 1996).

A claim of self-defense is not always an all-or-nothing proposition. Clearly, under a factual scenario such as exists in this case, manslaughter represents a middle ground between intentional malicious killing (murder) and legally excusable homicide (killing in self-defense). *See Stevenson v. United States*, 162 U.S. 313, 322, 16 S.Ct. 839, 842, 40 L.Ed. 980 (1896). On this point, I must part company with my fellow judges. Applying the law that I believe is controlling in this case, I would affirm only so much of the finding of guilty of the Specification of Charge I as finds that appellant unlawfully killed Thomas Kreiz in the heat of sudden passion caused by adequate provocation in violation of Article 119(a), UCMJ. I would affirm the remaining findings of guilty and order a rehearing on sentence.